[No. 1206.]

## THE STATE OF NEVADA EX REL. ATTORNEY GENERAL, RELATOR, *v.* D. B. BOYD, RESPONDENT.

CLASSIFICATION OF COUNTIES — UNCONSTITUTIONAL PROVISIONS — STATUTE 1883, 73.—The act fixing the salaries of county officers in certain counties (Stat. 1883, 73) is illusory, because some of its provisions are applicable only to Washoe County, and others only to Esmeralda County, and the basis of the classification as made in section 10 is unconstitutional, because in its practical operation it is applicable only to two counties and can never affect any other county.

IDEM — UNIFORMITY OF COUNTY GOVERNMENTS. — In order to observe the uniformity required by article 4, section 25, of the constitution, the classification of counties must be based upon reasonable and actual differences; the legislation must be appropriate to the classification, and embrace all within the class.

IDEM — OPERATION OF THE LAW. — The requirement that the system of county government shall be uniform is not considered to impart universality to the operation of the law.

QUO WARRANTO to determine respondent's right to hold the office of county assessor of Washoe County under the provisions of the act making the county treasurer of Washoe County *ex officio* the assessor. (Stat. 1883, 73.)

*Clarke & King,* for Relator:

*J. F. Alexander,* for Respondent:

By the Court, BELKNAP, C. J.:

Under the statute approved March 1, 1883, entitled "An act fixing the salaries of county officers in certain counties in this state, and other matters relating thereto" (Stat. 1883, 73), the county treasurer of Washoe County is made *ex officio* the assessor of the county. The question presented for consideration is, whether this provision is not unconstitutional.

It is claimed by relator that the provision is a violation of article 4, sec. 25, of the constitution, which provides that "the legislature shall establish a system of county and township government, which shall be uniform throughout the state." If this requirement can be expressed more significantly in its application to this case, it means that the legislature shall establish a uniform plan or method for the government of all

the counties of the state. It is a matter of general knowledge that legislatures are disposed to adopt, without particular scrutiny, measures proposed by the representatives of a particular locality, affecting it only, and not the state at large. The object of the provision was to prevent this character of legislation in relation to county government. Any change in the general system of county government may affect every county in the state. Among the advantages attained by this requirement is that legislation upon this subject will receive the careful attention of the members of the legislature in general, all proposed alterations will be scrutinized, and frequent and disturbing changes avoided.

In obedience to the requirements of the constitution, the legislature of 1866, in dealing with the general subject of county government, provided, among other things, for the election of a county assessor and a county treasurer for each county in the state. This legislation remains in effect in each county, unless the act of 1883, exempting Washoe County from its operation, and consolidating these offices in the county, can be upheld. It is too clear for argument or controversy that a legislative act, arbitrarily establishing this plain difference in the government of Washoe County from that of the other counties of the state, violates the system of uniformity contemplated by the constitution. No elaboration of the proposition can make it plainer than the simple statement of the facts. The draughtsman of the statute, in apparent anticipation of its conflict with the constitution, inserted a clause which may have been intended to give it the appearance of a general law. It is as follows:—

"Sec. 10. This act shall apply to all counties in this state in which there were cast more than eleven hundred and fifty votes, and less than thirteen hundred and fifty votes, at the general election held in eighteen hundred and eighty-two, in this state."

Washoe and Esmeralda counties each cast about 1,250 votes at the election of 1882, and they are the only counties in the state falling within the classification attempted to be made. It is apparent from an inspection of the statute that even this classification is illusory, because some of the provisions of the act are expressly applicable only to Washoe County and others only to Esmeralda County. The statute does not, therefore, apply uniformly, even within the limited classification named. But

the basis of classification cannot be sustained. Abstractly considered, the language of the section appears to contemplate a class of counties, but in its practical operation the law is applicable to Washoe and Esmeralda counties only, and can never affect any other county. The legislature could, with equal right, designate these counties by name, as by the total vote cast at a past election.

A statute somewhat similar in form and purpose was adopted by the legislature of Pennsylvania in the year 1878. It was intended to apply to Crawford County alone, but in order to evade the provisions of the constitution it was made applicable to all counties of more than sixty thousand inhabitants, "in which there shall be any city, incorporated at the time of the passage of this act, with a population exceeding eight thousand inhabitants, situated at a distance from the county seat of more than twenty-seven miles, by the usually traveled public road." The court held the classification improper, and said: "This is classification run mad. Why not say all counties named Crawford, with a population exceeding sixty thousand, that contain a city named Titusville, with a population of over eight thousand, and situated twenty-seven miles from the county seat? or all counties with a population of over sixty thousand, watered by a certain river, or bounded by a certain mountain?" (*Com.* v. *Patton*, 88 Pa. St. 260.)

In the case of *Zeigler* v. *Gaddis* the supreme court of New Jersey had occasion to discuss this subject. The case involved the validity of a law giving the court of common pleas power to grant licenses to keep inns and taverns "in all incorporated cities having a population not less than four thousand, and not exceeding a population of six thousand, and in towns having a population less than one thousand, in counties of this state, such counties having a population of not less than thirty-seven thousand, and not exceeding forty thousand, by the census of 1875." The court said: "The uniformity that is thus sought (by the constitution) can only be broken by classification of those bodies (political divisions of the state) that are founded on substantial differences, such as are not illusory or fraudulent in their character. (44 N. J. L. 365.) It is said in *Richards* v. *Hammer*, 42 N. J. L. 440, that 'the marks of distinction on which the classification is founded must be such in the nature of things as will, in some reasonable degree at least, account

for and justify the restriction of the legislation.' In ·brief, there must be a true, substantial classification, and not a hidden specification. As in the case last cited, the descriptive words, 'in any city of this ·state where a board of assessment and revision of taxes now exists,' etc., were found to be only applicable to the .cities of Elizabeth and Newark, so in this case the populations given in the act of 1879, on comparison with the census, limit the description to the counties of Warren and Hunterdon; and to the city of Lambertville, and the towns of Frenchtown and Clinton, all in the county of Hunterdon. The circumlocution and ostensible classification set forth in the act is, therefore, demonstrated to be aimed at these .three small municipalities in the whole state. There is no suggestion .of a distinction which will, in any reasonable degree, account for and justify this restriction of legislation to these three localities, and the attempt to do, by indirection, what it is apparent could not be done by a direct and specific description of the purpose of the .act, must fail." (See also *Pavonia H. H.·R.* v. *Jersey City,* 45 N. J. L. 298; *Rutgers* v. *New Brunswick,* 42 N. J. L. 51; *Anderson* v. *Trenton,* Id. 486; *Coutieri* v. *New Brunswick,* 44 N. J. L. 58; *McConihe* v. *McMurray,* 17 Fla. 269; *State* v. *Stark,* 18 Fla. 255; *Lake* v. *Palmer,* Id. 501.)

In order to observe the uniformity required by the constitution, classification, if made, must be based upon reasonable and actual differences; the legislation must be appropriate to the classification, and embrace all within the class. We are of opinion that if a set of counties be fairly classified in conformity with the views herein expressed, a law embracing them all would be unobjectionable as to uniformity. The requirement that the system of county government shall be uniform is not considered to import universality in the operation of the law. Such construction would defeat much useful legislation.

The respondent claiming to hold the office of assessor by virtue of an unconstitutional provision, it is ordered that a judgment of ouster be entered against him, with costs.