[No. 2039]

## STATE OF NEVADA, EX REL. GEORGE SPRING-MEYER, RELATOR, *v.* GEORGE BRODIGAN, AS SECRETARY OF STATE, RESPONDENT.

1. ELECTIONS—PRIMARY ELECTIONS—INDEPENDENT NOMINATIONS—PARTY DESIGNATION.

Under Rev. Laws, 1737, providing for the nomination of candidates for public offices by direct vote or by nominating petitions, and sections 1835, 1836, providing that nominations made by any convention shall be certified by a certificate containing the name of each person nominated, and the designation of the party or principle which the convention represents, and providing that a certificate of nomination shall contain the name of the candidate to be nominated with the other information required in the certificate of nominating conventions, the names of candidates nominated by petition are entitled to go on the official ballot with the designation of the party named in the certificate of nomination, and where a certificate of nomination for state offices, United States senator, representative in Congress, and presidential electors designates the candidates as the nominees of the Progressive party, the secretary of state may not certify the candidates as independent, but must certify them as candidates of the Progressive party.

SWEENEY, C. J., dissenting.

ORIGINAL PROCEEDING for writ of prohibition by the State, on the relation of George Springmeyer, against George Brodigan, Secretary of State, to prohibit respondent from certifying to the county clerks the name of relator and other candidates for public office as independent candidates. **Granted.**

The facts sufficiently appear in the opinion.

*Sardis Summerfield* and *George Springmeyer,* for Relator.

*Cleveland H. Baker,* Attorney-General, for Respondent.

By the Court, NORCROSS, J. :

This is an original proceeding in prohibition, in which an order is prayed for prohibiting the respondent, as secretary of state, from certifying to the several county clerks the name of relator and certain other candidates for public office as "Independent" candidates. The petition in this proceeding recites that on the 18th day of September, 1912, a certificate of nomination, signed by more than ten per cent of all the qualified electors in the state as shown by the last preceding general election, was filed with the secretary of state, in which certificate candidates for all state offices to be filled at the general election to be held in November, 1912, including candidates for presidential electors, United States senator, and representative in Congress, were regularly nominated, the said certificate of nomination further designating said candidates as the nominees of the Progressive party, which had for its candidate for president of the United States Theodore Roosevelt, and for vice-president Hiram W. Johnson. The petition further alleges that at the time of filing said certificate of nomination demand was made of the respondent that he certify all said candidates as nominees of the Progressive party, but that subsequently relator was informed in writing by the respondent that he, respondent, on the advice of the attorney-general, would certify all said nominees as "Independent," and under no other designation. The proceeding is of a friendly character, for the purpose of having an authoritative construction of certain provisions of the election laws relating to primary and general elections.

Section 2 of the act known as the "Primary Election Law," adopted by the legislature of 1909, provides: "All candidates for elective public offices shall be nominated as follows: (1) By direct vote at primary elections held in accordance with the provisions of this act; or (2) by nominating petitions signed and filed as provided by existing laws. Party candidates for the office of United States senator shall be nominated in the manner pro-

vided herein for the nomination of candidates for state officers." (Rev. Laws, 1737.) Sections 3 and 4 of "An act relating to elections and to more fully secure the secrecy of the ballot," adopted in 1891 (Rev. Laws, 1835, 1836), provide:

"SEC. 3. All nominations made by any such convention shall be certified as follows: The certificate of nomination, which must be in writing, shall contain the name of each person nominated, his residence and the office for which he is nominated, and shall designate the party or principle which such convention represents. * * *

"SEC. 4. A candidate for public office may be nominated otherwise than by a convention in the manner following: A certificate of nomination containing the name of the candidate to be nominated, with the other information required to be given in the certificate provided for in section 3 of this act, shall be signed by electors residing within the district or political division for which candidates are to be presented equal in number to at least ten per cent of the entire vote cast at the last preceding election in the state. * * *"

It is the contention of counsel for relator that, under the plain provisions of the two sections last above quoted, a certificate of nomination made by electors, otherwise than by convention, must designate the party or principle which the candidates so nominated represent, and that it follows as a duty upon the part of respondent to certify the candidates named in the petition, together with the party designation stated in the said certificate. Upon the contrary, it is the contention of the attorney-general that candidates of a political party cannot be nominated otherwise than by primary election; that the "party or principle" required to be designated in the certificate mentioned in section 3, *supra,* was applicable only to nominations made by conventions under the law as it existed prior to the adoption of the primary election law. The primary election law did not change the existing provisions relative to nominations of candidates by certificates signed by a prescribed number of electors, but specif-

ically provided that they should be continued in force. By section 4, *supra* (Rev. Laws, 1836), it is provided that the certificate shall contain "the name of the candidate to be nominated, *with the other information required to be given in the certificate provided for in section 3 of this act.*" What, then, is the other information required to be given in the certificate provided for in section 3? A certificate under the provisions of section 3 was required to contain, in addition to the name of the candidate, his residence, the office for which he was nominated, the "party or principle" which the convention represented. It must be conceded that the "party or principle" is information that was required to be given in the certificate made by the convention officers under the provisions of section 3, *supra.*

It is argued, however, that these words are limited by the other words used in their connection, "which the convention represents"; that, therefore, they are applicable only in cases where the certificate was made by convention officers and inapplicable where the certificate is made by electors. This construction places a limitation on the word "information" used in section 4, *supra,* and the point involved here might be resolved into the question: Did the legislature intend to exclude the designation of a party or principle in certificates made by electors? The language used may not be as clear as could be wished in statutes of this kind, and it may be somewhat ambiguous, but considering the act, generally known as the "Australian Ballot Law," as a whole, of which law the sections in question are a part, we think it was the intention of the legislature to require that the certificate made by electors shall contain all the information required in a certificate made by convention officers, including that of the designation of the party or principle which the candidate or candidates nominated by electors stand for. This we think is the spirit, if not the letter, of the law as it is written. Under the old party convention system, the party or principle was represented in the party name, and the statutes of some of the states which have adopted the Australian

ballot law do not refer to the party name or principle in stating what the certificate shall contain in the case of nominations made by a party convention, but specifically mention such requirement in cases of nomination certificates made by electors. Such is the case in the Minnesota statute, a case construing which will hereafter be referred to.

Where a doubt may exist as to the proper construction to be placed on a constitutional or statutory provision, courts will give weight to the construction placed thereon by other coordinate branches of government and by officers whose duty it is to execute its provisions. (*State* v. *Glenn*, 18 Nev. 34; *State* v. *Grey*, 21 Nev. 378, 19 L. R. A. 134.) Since the adoption of the Australian ballot law in this state, during the past twenty years, six different parties have at different times secured a place on the official ballot under party designation by means of electors' petitions, to wit: Silver, People's, Socialist, Prohibition, Stalwart Silver, and Independence League. If the construction contended for by the attorney-general is correct, these several parties should not have been designated otherwise than as "Independent." If this construction is correct, we are unable to see how any party coming into existence after the adoption of the Australian ballot law could ever get upon the ballot under its proper designation. In the absence of language permitting of no other construction, we ought not to impute to the legislature an intention to prevent the electors of the state who have organized a new party from having candidates representing that party from appearing on the ballot. We think the whole policy of our election laws has been to recognize the right of electors to form new political parties and to have candidates appear upon the official ballot at general elections under such party designations. Ten legislative sessions have come and gone since the secretary of state first certified candidates nominated by electors' petitions under party designations, and no change in the law has ever been made.

The primary election law of 1909 did not attempt to

change this feature of the old law. Nothing in *Riter* v. *Douglass*, 32 Nev. 400, is in conflict with the views here expressed. In that case we said: "The primary law expressly preserves the existing law wherein independent candidates and parties who may not be able to qualify or avail themselves of the primary law may get on the official ballot by independent action."

The point involved here was not involved in the Riter case, but that case recognized the right of a party to get on the ballot by "independent action"; that is, independent of the primary law by petition. The word "Independent" after the name of a candidate on the official ballot may represent a party or principle, and it was so held in the case of *Quealy* v. *Warweg*, 106 Minn. 145, 118 N. W. 673, decided in 1908, under a statute substantially like ours. In that case the court said: "The election law (section 214; R. L. 1905), so far as here involved, requires that the certificate of nomination, which may consist of one or more writings, shall contain the name of the person nominated, the office for which he is nominated, and the party or political principle he represents, expressed in not more than three words. It has been previously held that a petition (certificate) which wholly fails to set forth any party or political principle which the candidate represents is void, because the statute is mandatory, and must be complied with in every essential respect. (*State* v. *Grift*, 106 Minn. 29, 117 N. W. 921.) That case did not involve the propriety of any attempted statement of a party or political principle represented. The question is a new one in this state. The statute must be liberally construed so as to effectuate legislative intention, and to fully secure to the people their right to express their choice. A technical construction of the language used would be objectionable on general principles, and tend to subvert the purposes sought to be attained. That purpose was evidently to secure a designation of a party or political principle which would be sufficient *inter alia* to prevent the candidate from unfairly posing to one person as of his party and to other persons as of their respective parties.

All that the statute requires in this regard is a declaration of political principle. Independence in politics is a familiar and recognized principle. Accordingly, when the present candidate used the term 'Independent party,' he was within the spirit of the law. It is not material whether that designation be regarded as describing the 'party,' or whether the word 'party' be regarded as merely surplusage. An appropriate emblem was used. See *Schafer* v. *Whipple*, 25 Colo. 400, 55 Pac. 180."

If "Independent" sufficiently designates a political principle under the statute, as decided by the Minnesota court, and we think it does, then manifestly it would not appropriately designate candidates who represented defined principles such as those now being expounded by the Democratic, Republican, Socialist, Progressive, Prohibitionist, or other existing parties. One purpose, if not the only, the main purpose, in having some designation after the name of a candidate upon the official ballot, is to give information to the voter of the party or principle for which the candidate stands. The purpose and intent of the law is to give the voter this information, and the law should be construed accordingly, and not as contended, in a way that would be manifestly misleading. The views herein expressed are also supported by the case of *Schafer* v. *Whipple*, 25 Colo. 401, 55 Pac. 180. It is clear from the provisions of the primary election law of 1909 that it has only reference to existing parties appearing upon the official ballot at the last general election, for candidates for party nomination are required to make affidavit that "they affiliated with such party at the last general election in this state, and * * * voted for a majority of the candidates of such party at the last general election," etc. (Rev. Laws, 1740.) The candidates of parties which did not appear on the official ballot at the last general election could not make the required affidavit, and, if they could not obtain a place on the official ballot by petition, the party could not secure representation. Under the law as it was while the convention system prevailed, a party must have cast three per cent of the entire vote

cast at the last preceding general election in order to nominate by the convention method, but, as before stated, it was always recognized that a new party organization could obtain a place on the ballot under its party designation by petition of electors.

The cases mainly relied upon by the attorney-general— *Atkeson* v. *Lay*, 115 Mo. 538, 551, 22 S. W. 481; *State* v. *Rotwitt*, 18 Mont. 502, 46 Pac. 373; *State* v. *Tooker*, 18 Mont. 540, 46 Pac. 531, 34 L. R. A. 315; *Phillips* v. *Curtis*, 4 Idaho, 193, 38 Pac. 405—are distinguishable in principle from the case now before this court. In all these cases it was sought to obtain a regular party nomination of a previously existing party by means of a petition of electors. This, it was held, could not be done, for the reason that the statutes provided a method for the nomination of such candidates, and a body of electors could not arrogate to themselves the functions of a party organization. In the case of *Atkeson* v. *Lay, supra,* it was, however, held that the candidate nominated by petition of electors, while not entitled to go on the ballot as a regular party nominee, was entitled to go on the ballot in such a manner as to disclose the true status of his nomination. The court held: "In his case the requirements of the situation would have been fairly met by the heading 'Electors' (Republican) ticket,' which would have indicated as plainly to the voter the nature and character of his candidacy under one of his certificates as did the other headings indicate the character of the candidacy of those whose names appeared under those headings; * * * so, also, he had the right to have his name placed under another heading, at the top of the ticket, * * * which heading might well have been 'Electors' (People's) ticket,' or 'Electors' (People's party) ticket.' "

To the same effect is *Phillips* v. *Curtis, supra.*

If the Progressive party was a previously existing party, and a petition of electors was also filed designating candidates as of that party faith, an additional word or words would doubtless have to be used in the secretary of state's certificate so as to distinguish the candidates

from the regular party nominees, but there could be no doubt of their right to use the party name in conjunction with appropriate qualifying words. We need not consider what would be the case, as suggested, if several petitions had been filed nominating candidates as of the Progressive party. One solution of the proposition that suggests itself is that they would all be entitled to appropriate recognition, and all entitled to go on the ballot, but it will be time enough to cross that bridge when the court comes to it.

We think the candidates named in the petition are entitled to go on the official ballot with the designation "Progressive party," and that the writ prohibiting the respondent from certifying them as "Independent" should issue.

It is so ordered.

TALBOT, J., concurring:

Under section 1834 of the Revised Laws, which provides that "nominations for public office may be made by convention of delegates representing a political party which at the last election polled at least three per cent of the entire vote," under section 1835, which states, "all nominations made by any such convention shall be certified as follows: A certificate of nomination, which must be in writing, and shall contain the name of each person nominated, his residence and the office for which he is nominated, and shall designate the party or principle which such convention represents," and under the language of section 1836, that "a candidate for public office may be nominated otherwise than by a convention in the manner following: A certificate of nomination, containing the name of the candidate to be nominated, with the other information required to be given in the certificate required in section 3 of this act (preceding section, Rev. Laws, 1835), shall be signed by electors residing within the district or political division for which candidates are to be presented, equal in number to at least ten per cent of the entire vote cast at the last preceding election".—it

is clear that a certificate of nomination made by such a political convention should designate the party or principle which such convention represents.

In regard to what the certificate of nomination by petition of electors shall contain, when considered in connection with the words "with the other information required to be given in the certificate," provided in cases for nomination by convention which "shall designate the party or principle which such convention represents," the requisites are not so clear, and differences of opinion have arisen. The Progressive party, having been formed in the nation and state last summer, could not file a certificate of nomination of nominees by its convention under section 1834 of the Revised Laws, because it was not in existence and did not poll three per cent of the vote at the last election. The only other method provided by the statute for making nominations has been followed, and certificates of nominations signed by more than the required percentage of electors have been filed. It is stated in the certificates that the "nominees represent the Progressive party and the principles thereof, as declared and proclaimed by the Progressive National Convention at Chicago, Illinois, on August 7, 1912, nominating Theodore Roosevelt of New York for president of the United States and Hiram W. Johnson of California for vice-president of the United States."

It may be observed that section 1834 defines a convention which may make nominations, but the statute nowhere defines a political party; and the nominations here having been made by a certificate signed by the requisite number of electors, certifying that the nominees represent the Progressive party, and filed without objection, the question arises as to whether such a certificate may properly designate the party or principles for which the nominees stand, as clearly required in a certificate of nomination by a convention, whether the secretary of state ought to certify to the county clerks the names of the nominees with the party or principle they represent, as stated in the certificate, or whether he

may ignore this part of the certificate, and certify that the nominees are independent candidates.

Section 1840 states: "Not less than thirty-five days before an election to fill any public office, the secretary of state shall certify to the county clerk of each county within this state the name of each person and the name of the office for which he is nominated, as specified in the certificate of nomination filed with him." The county clerks are directed to supervise the printing of the ballots, and section 1844 provides that "the political designation of each candidate shall be printed opposite his name." There is no specific provision in the statute directing the secretary of state to certify the names of candidates under party designation or principle or as independents, but, as these designations serve no good purpose except for the information of the voter, it may be implied that it is the duty of the secretary of state to certify to the county clerks, not only "the name of each person and the name of the office for which he is nominated," but the party designation or principle for which he stands, if properly stated in the certificate of nomination. This seems to be necessary in order that compliance may be had with the statutory provision for the printing of the political designation opposite the names of the candidates. By the language quoted in sections 1835 and 1836, it is apparently the intention of the legislature and the spirit of the statute that certificates of nomination, other than by convention, and when made by the requisite number of electors, shall designate the party which the candidate represents, if he represents a party, or principle for which he stands, similarly to the requirement for a certificate of nomination by a convention. Under this construction, may not the candidates or the electors signing the petition, and a new party which they represent, although without power to nominate because it polled no vote at the preceding election, designate, in a certificate signed by the required percentage of voters, the party or principle for which the nominees stand, so long as their designation does not take the

name or infringe upon the rights of any other party? As several new political parties have been allowed to do this during the last twenty years, without any break in the precedent so established, and no new party can get on the ballot in any other way so as to have a standing at an election and poll the necessary percentage of votes to enable it to nominate candidates by convention for the next election, and as it is not fair to assume that the legislature intended to prevent the formation of new parties or to give the parties existing at the time the law was passed a monopoly or trust in the right to nominate candidates by convention, a liberal and just construction of the law will allow a new political party to put its designation on the ballot, as has so often been done. The legislature cannot deprive an elector who has been a resident of the state six months, and who has not committed any crime, of his inherent right under the constitution to exercise the elective franchise and vote for his choice. It may regulate, but it cannot take away, the right to vote, and it ought not to discriminate; and when the language of the statute is open to another, and the most reasonable, construction, it ought not to be so construed as to hold that the legislature has discriminated in favor of existing parties and against the formation and rights of new parties.

As we have seen, the designation of a party or principle for which the candidate stands is provided for in the certificate of nomination by a convention and indirectly in the certificate of nomination by petition of electors; and it naturally follows that power to make this designation is vested in the convention or electors authorized to make the certificate. It must be inferred that the political designation of a candidate to be printed opposite his name on the ballot is the same which has been fixed in the certificate. It has been suggested in the argument that the respondent as secretary of state cannot assume the functions of a high priest, with the exclusive power of christening a new party. He may refuse to file a certificate which is not in proper form, or perhaps to certify

to the county clerks a party designation in the certificate which is unauthorized, different from the party to which the certificate belongs, or which is contrary to the authority of that party; but there is nothing anywhere in the statute which, by the merest inference, can give him the semblance of power to interpolate into the certificate, or to certify or to order onto the official ballot any party designation or principle not stated in the certificate of nomination.   If, as proposed in this case, the secretary of state may certify a candidate on the official ballot as an "Independent" when the candidate has been nominated by a certificate as a "Progressive," he might with equal power certify on the official ballot as "Independent" candidates nominated as Democrats, Republicans, or Socialists.   As no authority is given for making a party designation except in the certificate of nomination, it is apparent that no officer, after the filing of the certificate, is authorized to change the designation of the party or principle for which the candidate stands, and that the certification of the name and party designation to the county clerk and the printing on the ballot ought to follow the certificate.

Uncertainty regarding these statutory provisions may have arisen from their consideration in connection with decisions in cases in which the candidate attempted to take advantage of some party name to which he was not entitled.   A good name may have protection, and, if these nominees were attempting to certify under some party name to which other candidates were entitled, it would be different.   "Who steals my purse, steals trash;  *  *  * but he who filches from me my good name, robs me of that which not enriches him, and makes me poor indeed."   An imitator of Sandow, the strong man, was restrained from advertising and appearing before the public as "Sandowe."   An inventor, after long advertising and the sale and manufacture of fountain pens, was able to prohibit the advertising and sale of a different pen under the  same name by another man of that name. This case bears no resemblance to the present one in

Kansas, where, as in California, presidential electors avowedly supporting Theodore Roosevelt, the nominee of the Progressive party, are seeking election under the name and prestige of the Republican party, the nominee of which is William H. Taft. It has been held in a number of instances that candidates may not proceed as, when they are not, party nominees. It may be admitted that the legislature may abolish the right of any political party to make nominations, as has been done in regard to judicial officers in some of the states. So long as the right of a political party to make nominations is recognized, the party ought to be allowed to fill nominations or leave any blank at will, and no candidate who is not such should be allowed to appear as the regular party nominee on the certificate or ballot. Different conditions are presented here. The wrongful attempt to pose, without authority, as the nominee of an existing political party, may be readily distinguished from the right to form a new party, and have that party adopt a name, select candidates, and have them nominated by the certificate designating the new party name and signed by the requisite number of electors. These nominees are not usurping the prerogatives of any other party, and no good reason appears why the new party which they represent and the principles which they espouse may not be designated in the certificate and given force with its other statutory provisions by the signature of the necessary percentage of voters, nor why the secretary of state should not certify their nominations accordingly, so that their names and their new party designation may be printed upon the ballots in accordance with the truth for the information of the voters at the polls.

The decisions properly hold that in cases like this, where the right or title of no party is being infringed, the statute will be liberally construed in favor of allowing the designation of the party or principle for which the candidate stands. No political party appears to claim that any usurpation or injury will result if the designation "Progressive party" is placed with the names

of these nominees on the official ballot. No issue is raised against the allegation that they are the nominees of the Progressive party. The Progressive party is not here contending that they are not its nominees. If it were shown that no Progressive party has been formed, then there would be none to be injured, and no wrong would result from allowing the nominees to be designated as "Progressive." This new party has no legal power to nominate its candidates, except through a certificate of nomination signed by electors numbering at least ten per cent of the votes cast at the last election. A less number may form a political party; and, whether all the signers of the petition belonged to the new party or not, by the statute the certificate becomes effective when signed by this number of electors. In the Colorado case, which was approved in the Minnesota case, the court said: "The statute does not purport to give a definition of a political party. In the Century Dictionary a political party is thus defined. 'A company or number of persons ranged on one side, or united in opinion or design, in opposition to others in the community; those who favor or are united to promote certain views or opinions,' and the definition in Webster's Dictionary is substantially the same. In this state there is no statute that in any way qualifies this definition, and a political party here, as elsewhere generally, is a voluntary association of voters who are desirous of promoting a common political end, or carrying out a certain line of policy. The association may be formed, not merely by a convention, but in other ways; and when electors to the number named in section 6 of the statute come together and agree upon a certain policy, and make a certain list of nominees, and select a party name and emblem, they may file with the proper officer the certificate evidencing their acts; and, while the mere filing of the certificate or petition may not create a political party, it is, nevertheless, the evidence of its previous formation, and the result of the acts of the association of electors culminating in a list of nominees gives to the organiza-

tion, with respect to its nominees, the same rights on the official ballot that are acquired by the nominees of a previously existing political party that makes its nominations by convention or a nominating committee." (25 Colo. 403, 55 Pac. 181.)

In the limited time for consideration since the argument and submission of the case yesterday afternoon, it is my conclusion that respondent may properly certify the name of the party as designated by electors in excess of the number required to sign the certificate. I concur in most of the views stated in the opinion of Mr. Justice NORCROSS, in the conclusion that the candidates' names in the petition are entitled to go on the official ballot with the designation "Progressive party," and in the order that the writ issue prohibiting the respondent from certifying them as "Independent."

SWEENEY, C. J., dissenting:

I cannot agree with the conclusions reached by my learned associates in the case under consideration.

Our legislature has provided two methods whereby nominees may get on the official ballot, and not otherwise. In one way party candidates are to be nominated pursuant to the primary law as passed in 1909 and amended in 1911. The other method left open to those who do not represent a regular party, or who are not privileged to be designated as party nominees, is by an independent course provided for by the Australian ballot law, approved March 13, 1891. To become entitled to go on the official ballot as a nominee of a party, the nominee must comply with the law as provided by our legislature which provides how party nominees must be selected; and, if a candidate decides to go otherwise than as prescribed by our legislature for party nominees, he must come on the official ballot by the independent route prescribed by the legislature for independent candidates. In the present case the candidates who desire to go on the official ballot as candidates of the Progressive party have not complied with the law provided by our legisla-

ture, which would authorize them to go on as candidates of a party, and in consequence, having chosen the independent route by securing a sufficient number of signatures to authorize them to get on the ballot by the independent course of action prescribed by our legislature, they are forced to go on as independents as distinguished from regular party nominees. My learned associates and counsel for relator seem to fail to grasp the distinction between a political party and a faction of a political party. In other words, the present candidates, who have secured a sufficient number of signatures required by law, which provides for independent candidates to go on the official ballot, represent but a faction of the Progressive party as distinguished from being the candidates of the Progressive party as a whole.

As illustrative of my position, suppose two or three sets of candidates presented their names to the secretary of state as the "Progressive party" candidates. The law provides that each party is entitled to one nominee for United States senator, one for congressman, and so on for the respective offices. How could the secretary of state know, if two or more petitions were presented to him simultaneously, claiming to be the Progressive party candidates, which candidates really represent the Progressive party nominees, unless they had complied with the law, submitting themselves to their party as a whole or by those in control as required by law, to say authoritatively that they are entitled to the party appellation? The petitions presented by the candidates who call themselves the Progressive party nominees are signed by a conglomeration of electors of different political faiths, some of whom may be Democrats, Republicans, Socialists, or so-called Progressives. The legislature has prescribed that, before any candidate is entitled to go on the official ballot as the nominee of a party, the party must have polled at least three per cent of the votes of the state. There does not seem to be any question but that the legislature has the authority to designate the percentage which is requisite to entitle a party to become worthy of

the dignity of the name to authorize it to go on the official ballot as a party.   Certainly, if two petitions by two candidates for United States senator or representative in Congress were presented to the secretary of state, they both could not represent the Progressive party in view of the fact that each party is entitled to but one nominee.   Unquestionably any number of citizens are entitled to form a new political party, but when they do so, before their nominees can go on the official ballot as the nominees of that party, they must first conform to the existing laws provided by our legislature as to the manner and mode of acquiring a place on the official ballot.

Counsel for relator in their argument, appeared to rely mainly upon the case of *Schafer* v. *Whipple,* 25 Colo. 400, 55 Pac. 180, and this case is cited with approval by my associates as sustaining the majority opinion of this court. A careful examination of this case will disclose that it is not in point, and is distinguishable from the case at bar, for the reason that it is founded upon a special statute of Colorado, permitting electors desiring to nominate candidates by petition to select a name and emblem by which their candidates should be designated upon the ticket. This is apparent by the reading of pages 401 and 402 of 25 Colo., 55 Pac. 180, in which the laws are partially set forth, the full laws appearing in Colorado Session Laws 1891, p. 151, and Laws Extra Sess. 1894, p. 62.   It is further shown by reference to the citations of this case in 15 Cyc. 335–336, where the text of the work discloses that this decision was founded upon a statute as above stated. By reference to the cases of *Whipple* v. *Kleckner,* 25 Colo. 423, 55 Pac. 163, and *Phillips* v. *Smith,* 25 Colo. 398, 55 Pac. 177, appearing in the same volume of Colorado reports, it appears that great confusion arose in Colorado over this provision allowing electors in their petitions to designate the party of their candidates, and the court was called upon in these two cases of nominations by petition to determine which faction really represented the political party they had both claimed to represent.

In the case at bar, if the petitioner's contention is correct, and the party name of the candidates can be designated in a nominating petition by electors, it is entirely possible that this court could now be sitting to determine which one of four or five rival factions really represent the "Progressive party," and which faction is entitled to have its nominees go upon the ballot at the general election under such party name. A "nominee" is either a "party nominee" selected by his party according to law, or he is an "independent nominee" selected by "electors," such as the petitioners represented in the present case, and all nominees fall within one of these classes, and the secretary of state must certify them accordingly. The fact that previous secretaries of state have allowed nominees of new parties to go on the ballot without complying with the law is no valid reason, if they were wrong in doing so in the first case, for justifying a continuance of this error. The fact of the matter is that all of the nominees of the new parties designated in the majority opinion were placed on the ballot prior to the passage of the primary act, which abolished the convention system of nominating, and, further, the point of whether or not they were entitled to go on the ballot as party nominees was never raised or questioned, or presented for consideration either to the attorney-general or this court for an opinion thereon. If the question had been raised, no doubt the writ of prohibition would have been issued against allowing their names to go on the ballot until they had complied with the law in this respect. Because an error originally committed was thereafter followed would not cure the original error if followed indefinitely, unless the law-making power remedied the defect. For more than nineteen years various of our secretaries of state acted as ex officio clerks of the supreme court, but, when the question was presented for the first time recently, the error was remedied, and the secretary of state denied the right so to act.

Various courts have passed upon the point at issue in well-reasoned opinions sustaining the position of the

attorney-general in his opinion to the secretary of state. (*Atkeson* v. *Lay*, 115 Mo. 551, 22 S. W. 481; *State* v. *Rotwitt*, 18 Mont. 502, 46 Pac. 373-374; *State* v. *Tooker*, 18 Mont. 540, 46 Pac. 531; *State* v. *Reek*, 18 Mont. 557, 46 Pac. 438.)

The Supreme Court of Missouri in the case of *Atkeson* v. *Lay*, 115 Mo. 551, 22 S. W. 484, speaking on this point, said: "The law makes no provision for the nomination of candidates by a political party of less strength than the required three per cent, or in any other manner than by a convention of delegates or a primary election, and only candidates so nominated become the nominees of a political party, and as such entitled to go upon the ballot to be so voted for. Candidates nominated by electors are not the nominees of a political party, but of the individual electors nominating them, and only as such are entitled to go upon the ballot."

In the case of *State* v. *Rotwitt*, 18 Mont. 509, 510, 46 Pac. 373, 374, the Supreme Court of Montana, reviewing this question, said: "The law contemplates nominations by conventions, by primary meetings held to make nominations, or by petition by a certain number of electors resident within the district or political division in which the officer is to be elected. Conventions or primary meeting nominations, under the law, are made by organized assemblages of electors or delegates representing a political party or principle, and only candidates so nominated are the nominees of political parties, and only such are entitled to be placed as regular party nominees upon the official ballots. A candidate certified as nominated by electors is not nominated by a political party. He is simply a candidate of those individual electors who have joined in nominating him, and he is only entitled to be placed upon the ballot as such a candidate. * * * The secretary of state, therefore, cannot certify a candidate so nominated by electors as the candidate of a political party, for clearly he is not such a candidate, and has no place in a group of candidates certified as nominated by a regular political party convention or organization under the name of the party making such nominations. * * *"

The Supreme Court of Oregon, in the case of *Clinton v. City of Portland*, 26 Or. 410, 38 Pac. 407, said: "The electors' nomination of petitioner, containing, as it does, in our view, the requisite number of names, and having been filed in time, entitles the petitioner to have his name placed upon the official ballot as an independent candidate for the office of senator. * * * To hold that any 150 electors may secure the name of any person they see fit to indorse to be placed upon the ticket of any party would, we think, be opening the door to the perpetration of fraud, would, in fact, be offering an inducement therefor. And neither American politics nor politicians have as yet, even among the most utopian organizations, reached that stage of purity which will warrant or excuse the removing of all legal restraints from them."

In Pennsylvania it was held: "A faction of a political party is not authorized to nominate by certificates, though polling under a distinctive title over two per centum of the largest entire vote cast in the state at the last preceding election." (*Certificates of Nomination of McKinley-Citizens' Party*, 6 Pa. Dist. R. 109.)

The Supreme Court of Kansas having had this identical question under consideration, as to whether or not the presidential electors of the "Progressive party" should go on the official ballot as "Independents" or "Progressive party" nominees, held late this afternoon, according to an Associated Press telegram, adversely to the contentions of relator and the majority opinion of this court, that the "Progressive party electors must go on the official ballot as 'Independents,'" for the reason they had not complied with the law authorizing them to go on the ballot as party nominees.

For the foregoing reasons, I am of the opinion that the secretary of state was right in refusing to allow the candidates of the Progressive party to go on the official ballot otherwise than as independent candidates, because they had not complied with the law, and that, having taken the course prescribed by law for independent candidates, the secretary of state was not only authorized,

but compelled, to certify their names as "Independent" candidates.

The writ prayed for should be denied.