[No. 2243]

# DEWITT C. TURNER, PETITIONER, *v.* W. A. FOGG, COUNTY CLERK OF WASHOE COUNTY, AND A. E. WILSON, COUNTY CLERK OF CHURCHILL COUNTY, NEVADA, RESPONDENTS.

[159 Pac. 56]

1. STATUTES—SUBJECTS AND TITLES.

The act of March 29, 1915 (Stats. 1915, c. 283), entitled "An act regulating the nomination of candidates by political parties, providing for the holding of primaries and conventions, and regulating the manner of nominating candidates by petition," does not contravene the constitution, art. 4, sec. 17, providing that each law shall embrace but one subject and matters properly connected therewith, which subject shall be embraced in the title.

2. STATUTES—PARTIAL INVALIDITY.

The unconstitutionality of one section of a law does not destroy the validity of other provisions which can stand independent of such section.

3. CONSTITUTIONAL LAW—VALIDITY OF STATUTES—APPORTIONMENT.

Where a petition fails to show that authorized representatives of the Progressive party sought to preserve the rights of their party under section 8, Stats. 1915, c. 283, for the apportionment of convention delegates, *held* that petitioners for writ of prohibition cannot question the validity of section 3, providing for apportionment on the basis of vote for congressmen at the last election.

4. CONSTITUTIONAL LAW— STATUTES — NOMINATIONS —VALIDITY — ENFORCEMENT.

On an application for prohibition on the eve of election to annul Stats. 1915, c. 283, providing for the nomination of candidates by political parties, and the holding of primaries and conventions, the court will not speculate on the effect of possible contingencies on the validity of the act, nor annul it because contingencies may arise under section 11 of such act which would make the act impossible of enforcement.

5. ELECTIONS—REGISTRATION OF PARTY AFFILIATION—VALIDITY OF STATUTE.

Stats. 1915, c. 283, secs. 12 and 14, requiring electors to register their party affiliation as a prerequisite to the right to vote at primary election, is a reasonable regulation and valid exercise of the legislative power.

6. ELECTIONS—PRIMARY ELECTIONS—REGISTRATION.

Under Stats. 1915, c. 283, secs. 12 and 14, which was not repealed by Stats. 1915, c. 285, sec. 8, the names of electors which appear upon the certified registration list as copied from the register of the last general election, together with the names that appear on the supplemental list, constitute the list of electors qualified to vote at the primary election.

7. ELECTIONS—STATUTES—CONSTRUCTION.
　　Election laws are to be liberally construed to enable the largest participation of qualified electors in all elections.

ORIGINAL PROCEEDING. Application for a writ of prohibition by Dewitt C. Turner against W. A. Fogg, County Clerk of Washoe County, and another, to contest the constitutionality of Stats. 1915, c. 283. Application denied, and proceedings **dismissed.**

*W. W. Griffin,* for Petitioner:

The act of the legislature, approved March 29, 1915, under which respondents are making preparations for a primary election to be held on the second Tuesday in August, 1916, is wholly null and void, being contrary to and violative of the constitution of the State of Nevada and the constitution of the United States. It is null and void because it is impossible of enforcement and execution. It violates the requirements of section 17, article 4, constitution of the State of Nevada, in that the title includes distinct subjects excluded by the provisions of said act, contains matter not properly connected with the subject, and in that the title does not briefly express the subject of the act.

It is further unconstitutional in that it prohibits petitioner, or any member of a political party which did not have a candidate for Congress at the last election, from voting at said primary, thus depriving him of his constitutional rights, and in that it denies the benefits of said law to any political party, or any elector thereof, which may have come into existence since the last election for representative in Congress.

All the regulations of the elective franchise must be reasonable, uniform, and impartial. (9 R. C. L. 982.) Legislative regulations as to the manner of voting and the restrictions placed thereon must be tested frequently by the broad rule laid down in many constitutions to the effect that elections must be "free and equal." Under such a guaranty the right to vote, as the words expressly state, must be maintained absolutely free, and the vote of

every elector must be granted equal influence with that of every other elector.   (9 R. C. L. 984.)

*Geo. B. Thatcher*, Attorney-General, *E. F. Lunsford*, District Attorney of Washoe County, and *Eli Cann*, District Attorney of Churchill County, for Respondents:

The petition does not state a cause of action sufficient to entitle the petitioner to the relief prayed for.   As has been repeatedly decided by different courts of the United States, as well as by this court in different instances, the writ of prohibition is a discretionary one, and should not issue unless the petition shows that some redress is necessary to be given by the court or that some privilege guaranteed to a person is about to be withheld from him.   There is no allegation that the Progressive party is such a party as is recognized by section 2 of the act as a political party, nor does the petitioner allege that he has registered, as the act requires, and has stated his politics as being that of a Progressive, and that he is entitled to vote for a delegate to the Progressive convention.

This proceeding is to attack the constitutionality of the so-called primary act.   Counsel for the petitioner has not cited a single constitutional provision that is violated by the act.   The act might have been better framed and made easier of enforcement and execution, but it is not in any respect unconstitutional.   Every point which has been raised by the petitioner in support of his petition has been already disposed of by this court.   (*Riter* v. *Douglass*, 32 Nev. 400.)

*H. V. Morehouse, George Springmeyer, S. S. Downer, Thos. E. Kepner, James Glynn, J. M. Frame, Anthony Jurich*, and *N. J. Barry, amici curiæ*.

By the Court, COLEMAN, J.:

This is an original proceeding in prohibition, designed to test the constitutionality of that certain act of the legislature approved March 29, 1915, entitled "An act regulating the nomination of candidates by political parties,

providing for the holding of primaries and conventions, and regulating the manner of nominating candidates by petition." (Stats. 1915, p. 453.)

The petition in this case was filed July 17, 1916, and an alternative writ issued returnable July 22. The importance of the case and the shortness of the time allowed for its consideration caused the court to request a number of prominent attorneys of the state to appear as friends of the court, for the purpose of giving the court the benefit of their several opinions, in order that a correct conclusion might be reached. In view of the fact that petitioner delayed his objections to the act until so short a time before the election provided for in the act sought to be annulled, and in view of the fact that the petition does not show that petitioner sought to secure any rights alleged to be guaranteed to him and infringed by the act in question, through the medium of authorized representatives of his party or by application in any way to other legally constituted authorities, this court might well be justified in refusing to consider any questions presented under the extraordinary writ prayed for, which writ rests in the sound discretion of the court.

For the purpose of avoiding possible future litigation, the court will determine certain of the contentions made by petitioner which bear upon his rights as a member of the Progressive party. Certain other questions in which the petitioner's rights are only in common with those of all electors generally will not be determined in this proceeding.

We may premise what we will say in discussing the questions deemed important to be determined or referred to by referring to the well-settled proposition of law that all presumptions are in favor of the constitutionality of acts passed by the legislature, and that all reasonable doubts are determined in favor of legislative enactments, and that courts have nothing to do with questions which go to mere policy or expediency of acts of the legislature. It is proper here to state that the arguments presented showed a wide difference of opinion relative to the

constitutionality of the act in question, both by counsel appearing for the parties to the proceeding and those appearing as friends of the court.

**1.** It was contended: First, that the whole act was void because the title contains more than one subject, in violation of section 17 of article 4 of our constitution. We think the objections to the title of the act are fully answered by former decisions of this court, particularly in the case of *State* v. *State Bank and Trust Co.*, 31 Nev. 456, 103 Pac. 407, 105 Pac. 567. It is also contended that section 3 of the act in question deprives petitioner of his rights as an elector and member of the Progressive party because that section apportions delegates to the state and county conventions on the basis of the vote for representative in Congress at the last preceding election, and that the party of which he is a member, having had no candidate for representative in Congress at such election, is therefore deprived of participating in the primary election. It is conceded, under the provisions of section 2 of the act in question, that the Progressive party is within the classification of parties entitled to the privileges of the act in question. It is not alleged in the petition that the representatives of the party of which petitioner alleges himself to be a member made any attempt to avail themselves of the privileges of the act by complying with the provisions of section 8, or that the petitioner made any request of the state and county central committees of his party to apportion delegates to the state and county conventions as prescribed in such section prior to the time fixed in such section, or at all, for such action by such state or county central committees.

Assuming, however, for the purposes of this decision, that the rights of a party elector may not be cut off by reason of the failure or neglect of the duly constituted state or county party central committees, we shall consider whether the provisions of section 3 actually have the effect of depriving a political party otherwise entitled to the privileges of the act from participating in the primary election.

It is provided in section 29 of the act that:

"This act shall be liberally construed, to the end that the real intent of the electors shall prevail."

As before pointed out, section 2 of the act gives the Progressive party the positive right to proceed "to elect delegates to party conventions as hereinafter provided."

**2.** If we were to assume that section 3 is unconstitutional, and so hold, such holding would not destroy the validity of other provisions of the act, which could stand independent of said provisions. It is the contention of counsel for respondents that the provision in question is directory merely, and not binding upon a party otherwise entitled to the benefits of the act, but which cannot comply with this basis of apportionment. Authorities have been cited which seem to sustain this view. (*Morrow* v. *Wipf*, 22 S. D. 146, 115 N. W. 1126.)

**3.** As the duly authorized representatives of petitioner's party, so far as appears from the petition, did not, within the time prescribed by the provisions of section 8, seek to preserve the rights of their party by any other reasonable method of apportionment, we cannot see where the petitioner is entitled, particularly in this character of proceeding, to question the validity of this particular provision of the act.

**4.** It is contended by petitioner that section 11 of the act renders the entire act void because, under contingencies which may arise under the provisions of that section, the act would be impossible of enforcement. Our attention has not been directed to any specific provision of the constitution which this section violates. If the officers and party representatives named in the section perform the duties prescribed, no manifest difficulty would arise in carrying out the provisions of the section. We think it not within the proper province of the court, in a proceeding of this extraordinary character, instituted virtually on the eve of the election provided for in the act, to speculate upon what the effect would be should certain possible contingencies arise under the provisions of this section.

**5.** It has been contended that the act is void because the provisions of sections 12 and 14 together limit the

right to vote at the primary election to electors only who have duly entered upon the register the designation of their party affiliation. It is well settled that the requirement for registration of party affiliation as a prerequisite to the right to vote at a primary election is a reasonable regulation and a valid exercise of legislative power. (R. C. L. p. 1075, sec. 89.) In this connection the question was suggested in the arguments of respective counsel as to what registration controls for use at the primary election. The question is one of great importance and doubtless will result in future litigation unless now determined. We think it clear that the specific provisions of sections 12 and 14 relating to primary elections are controlling as to what electors are entitled to vote at the primary election. Section 12 of the act in question, in prescribing the qualifications and regulation of voters at the primary election, among other things provides that the same officers who prepare and furnish registers for general elections shall prepare and furnish them for use at primary elections, and it is made the duty of these officers to furnish and certify lists of the voters entitled to vote at such primary election. In providing as to how the register for such primary election shall be made, the statute sets forth:

"Said register shall be made by taking the names of all voters on the register used at the last general election in the city, precinct, or county, together with supplemental registers or additions showing all additional registrations, changes, and corrections made since the last general registration. The supplemental registers to be made as follows: All persons entitled to register or vote at any primary election in any precinct, city, or county whose names are not upon the register, or who may be entitled to transfer their registration, shall be entitled to be registered or transferred so as to enable them to vote at such primary election, and for that purpose it shall be the duty of the officer charged with the registration of voters of such precinct, city, or county, to keep his office open for at least fifty days prior to ten days immediately preceding such primary election, and to register all voters

entitled to vote at such primary election. (Stats. 1915, p. 457, sec. 12.)

It is clear to our mind that under the provisions of the section quoted all voters whose names appeared on the register used at the last general election in any city, precinct, or county are, by the terms of the act, regarded as duly registered electors for the primary election contemplated by the law, and their names are to be certified by the proper officers as having been duly copied from the registration lists of the last general election.

**6.** In addition to this register of voters, a supplemental register is provided for by the section, and this supplemental register makes provision for the registration of any voter entitled to register or vote at the primary election in any precinct, city, or county whose name is not upon the register of the last general election in such city, precinct, or county. The registered voters whose names appear upon the certified lists as copied from the register of the last general election, together with the names that appear on the supplemental register, constitute the list of electors qualified to vote at the primary election.

The general election law (Stats. 1915, c. 285), entitled "An act relating to election," approved on the same day as the act in question, is, in the main, a mere compilation of prior existing election laws. Section 8 of the general election law provides, "A new registration of the electors of this state shall be made in the year of 1916, within the dates hereinafter specified, and every two years thereafter," and is precisely the same provision which was contained in the act of 1913, except that the figures 1916 were substituted in lieu of those of 1914. The general law regulating registration which has been in force in this state for many years contemplated a new registration for the general election every two years. By no reasonable construction could it be said that the provisions of section 8 of the general election law repeal or modify the provisions of section 12 of the primary election law. Section 12 of the primary election law of 1915 is, except as to immaterial modifications, precisely the same as section 17 of chapter 3, Stats. 1913, p. 520, and the same

as section 17 in the primary election law of 1909 (Rev. Laws, 1751). It is therefore clear that the legislature of 1915 did not make any change in the prior existing law in so far as registrations for primary elections is concerned.

7. It is well settled that election laws are to be liberally construed to enable the largest participation in all elections by qualified electors. Undoubtedly all the electors whose names do not appear upon the register "used at the last general election in the city, precinct, or county," and who register for the general election of 1916 prior to the time at which registration closes for the primary election, are entitled to have their names placed upon the register for such primary election.

As said by the Supreme Court of Pennsylvania, in a similar case recently decided:

"If it were our duty to make the law, no doubt some of its provisions would be written differently, but we cannot declare an act void because in some respects it may not meet the approval of our judgment, or because there may be difference of opinion as to its wisdom upon grounds of public policy. Questions of this character are for the legislature, and not for the courts. If the restrictions complained of in this proceeding are found to be onerous or burdensome, the legislature may be appealed to for such relief, or for such amendments, as the people may think proper to demand. (*Winston* v. *Moore*, 244 Pa. 447, 91 Atl. 520, L. R. A. 1915a, 1190, Ann. Cas. 1915c, 498.)

Application for the peremptory writ is denied, and the proceedings are dismissed.

It is so ordered.