CHARLES M. DAMUS, APPELLANT, *v.* THE COUNTY OF CLARK, A LEGAL SUBDIVISION OF THE STATE OF NEVADA; THALIA DONDERO, ROBERT BROAD-BENT, DAVID CANTER, RICHARD RONZONE, JACK PETITTI, MANUEL CORTEZ, AND SAM BOWLER, CONSTITUTING BOTH THE DULY ELECTED BOARD OF COUNTY COMMISSIONERS AND THE DULY CONSTITUTED BOARD OF HOSPITAL TRUSTEES; AND THE SOUTHERN NEVADA MEMORIAL HOSPITAL, A COUNTY HOSPITAL DULY CREATED BY LAW, RESPOND-ENTS.

No. 10054

September 28, 1977                    569 P.2d 933

---

[Rehearing denied October 26, 1977]

*Franklin, Bixler, & Damus,* Las Vegas, for Appellant.

*George E. Holt,* District Attorney, *James M. Bartley,* Deputy District Attorney; and *Robert L. Petroni,* Las Vegas, for Respondents.

## OPINION

By the Court, MANOUKIAN, J.:

On May 7, 1977, the Nevada Legislature enacted Chapter 403 of the Session Laws which amended Section 450.290 of the Nevada Revised Statutes pertaining to the issuance of bonds to benefit county hospitals. Specifically, the new law principally amended subsection 2 of that statute which, prior to amendment, had provided that any county with a population in excess of 200,000, could issue, without voter approval. special obligation municipal securities payable solely from the gross or net revenues derived from the operation of the hospital.

As amended, subsection 2 now not only provides authority for such counties to issue *special* obligation bonds but. further provides authority for those counties to issue *general* obligation bonds payable from taxes with payment being secured by

a pledge of revenue from the operation of the hospital. A full reading of the amended legislation is set forth in the footnote.[1]

On June 27, 1977, the General Obligation Bond Commissioners of Clark County approved the bond issue of $12,400,-000.00 for capital expenditures relating to the modernizing of the Southern Nevada Memorial Hospital, a county and nonproprietary facility. The next day, the individual respondents, acting in their official capacity as County Commissioners, enacted an ordinance authorizing, without electoral approval, the issuance and sale of general obligation bonds pursuant to the amended statute.

Thereafter, appellant Damus commenced a class action for declaratory relief challenging the validity of respondents' enactment of the ordinance. In the court below, appellant alleged the ordinance to be invalid, contending Chapter 403 constitutes special and local legislation, being in derogation of the Nevada Constitution; claiming that the ordinance was

[1]"NRS 450.290. Issuance of general obligation bonds; pledge of gross, net revenues.

1. Subject to the provisions of NRS 450.010 to 450.510, inclusive, for any hospital project stated in a bond question approved as provided in NRS 350.070, the board of county commissioners, at any time or from time to time, in the name and on behalf of the county, may issue:

(a) General obligation bonds, payable from taxes, and

(b) General obligation bonds, payable from taxes, which payment is additionally secured by a pledge of gross or net revenues derived from the operation of the hospital facilities, and, if so determined by the board of county commissioners, further secured by a pledge of gross or net revenues derived from any other income-producing project of the county or from any license or other excise taxes levied by the county for revenue, as may be legally made available for their payment.

2. The board of county commissioners of any county having a population of 200,000 or more, as determined by the last preceding national census of the Bureau of Census of the United States Department of Commerce, in the name and on behalf of the county, may issue, for any hospital project, without the securities being authorized by election:

(a) Special obligation municipal securities payable solely from net revenues or gross revenues derived from the operation of hospital facilities.

(b) General obligation bonds, payable from taxes, which payment is additionally secured by a pledge of gross or net revenues derived from the operation of hospital facilities. The board of county commissioners may use for the payment of principal or interest of such bonds, or both, any other revenue available to the county. Bonds may be issued under the authority of this paragraph only if their principal amount, plus the principal amount of any previously so issued, does not exceed 1 percent of the assessed valuation of all taxable property in the county."

invalid because Chapter 403 violates the principles of equal protection guaranteed by the Fourteenth Amendment of the United States Constitution; and alleging procedural deficiencies in the preliminary bonding proceedings.

After a trial to the court, without a jury, the district court, having made findings of fact and conclusions of law, entered judgment in favor of respondents, upholding the challenged legislation as constitutional in all respects. Damus appeals from that judgment.

1. *Whether Chapter 403 constitutes special and local legislation.*

Appellant argues that Chapter 403 is special and local legislation violative of the Nevada Constitution. We disagree. State of Nevada ex rel. Clarke v. Irwin, 5 Nev. 111, 121 (1869), defined local legislation as operating over a particular locality instead of over the whole territory of the State and defined special legislation as pertaining to a part of a class as opposed to all of a class.

It has long been the law of this State that all presumptions by the judiciary are in favor of legislative enactments. City of Las Vegas v. Ackerman, 85 Nev. 493, 457 P.2d 525 (1969); Ormsby County v. Kearney, 37 Nev. 314, 142 P. 803 (1914). Additionally, every act passed by the legislature is presumed to be constitutional. T. & G. R. R. Co. v. Nev. Cal. T. Co., 58 Nev. 234, 75 P.2d 727 (1938). Appellant, in order to successfully assail this legislation, must make a clear showing of its invalidity. McGowan v. Maryland, 366 U.S. 420 (1961); Turner v. Fogg, 39 Nev. 406, 159 P. 56 (1916).

Our Constitution forbids the passage of a local or special law regulating "county or township business." Nev. Const. Art. 4, Sec. 20. Such a law must "be general and of uniform operation throughout the state." Nev. Const. Art. 4, Sec. 21. Further, county and township government "shall be uniform throughout the State." Nev. Const. Art. 4, Sec. 25.

Appellant interprets the foregoing constitutional provisions as requiring uniformity in bond issuance on behalf of county hospitals. Indeed, he argues, subsection 1 of NRS 450.290 is general and uniform legislation, as it requires approval of the bond issuance by electoral authorization pursuant to NRS 350.070. The only difference between subsections 1 and 2 of

NRS 450.290, as amended, is that in subsection 2 any county with a population over 200,000 may issue without voter approval not only special obligation bonds but also general obligation bonds payable from taxes and secured by hospital operating and other revenues.

Appellant contends that because only Clark County currently has the requisite population, this is patent local and special legislation. He argues that the population requirement is a mere subterfuge to avoid outright identification of Clark County as the sole beneficiary of the legislation. It is arguable that respondents have provided substance to appellant's argument by eliciting testimony below that, in Nevada, only in Clark County does the county hospital have to compete with private, profit-making facilities. Respondents claim that the benefit of the subject legislation is needed so that the county hospital can successfully compete for quality staff and service personnel and accommodate the large population with more facilities and sophisticated equipment. These facts are just as consistent with respondents' position. We have long upheld, as constitutional, statutes authorizing bond issues for specific counties for purposes particular and peculiar to those counties, reasoning that such statutes were not laws "regulating county business" and thus not violative of Article 4, Section 20. Cauble v. Beemer, 64 Nev. 77, 177 P.2d 677 (1947); Conservation District v. Beemer, 56 Nev. 104, 45 P.2d 779 (1935).

That is precisely the case before us.

In the *Conservation District* case, this Court held that:

> It is the general rule, under such provisions as those of sections 20 and 21 of article 4 of the state constitution, that if a statute be either a special or local law, or both, and comes within any one or more of the cases enumerated in section 20, such statute is unconstitutional; *if the statute be special or local, or both, but does not come within any of the cases enumerated in section 20, then its constitutionality depends upon whether a general law can be made applicable.* (Court's emphasis.)

*Id.* at 116, 45 P.2d at 782.

Moreover, the use of population as a qualifying criterion is permissible. Fairbanks v. Pavlikowski, 83 Nev. 80, 423 P.2d 401 (1967); Viale v. Foley, 76 Nev. 149, 350 P.2d 721 (1960); *Compare* State v. Donovan, 20 Nev. 75, 15 P. 783 (1887); *cf.* State v. Boyd, 19 Nev. 43, 5 P. 735 (1885). In

the instant case, the classification scheme remains open and any other county reaching the minimum qualifying figure will be entitled to exercise the authority granted by the statute.

Respondents state that the latest reliable population estimate for Washoe County is approximately 171,000. It appears possible, or even probable, that Washoe County may qualify under the new law's classification at the time of publication of the 1980 census. In *Fairbanks, supra,* this Court relied on the classification of townships according to U.S. Census figures rather than the more recent, actual statistics. We acknowledge that population classifications are more easily justified when, for example, the number of elected public officials, as opposed to the situation presently before us, is to be determined relative to population minimums and/or maximums (*see* NRS 4.020 and NRS 244.010 *et seq.,* concerning justices of the peace and county commissioners, respectively), nevertheless an act should not be declared void because there may be a difference of opinion as to its wisdom. These are questions for the legislature, not the courts. Turner v. Fogg, *supra; Fairbanks, supra.* The fact the law might apply only to Clark County is of no consequence, for if there were others, the statute would then also apply. "It therefore conforms to the constitutional mandates that there shall be no local or special laws, and that general laws shall have uniform operation. Nev. Const. Art. 4, Secs. 20 and 21; Cauble v. Beemer, 64 Nev. 77, 177 P.2d 677 (1947)." *Fairbanks, supra,* at 83, 423 P.2d at 403.

Here, the basis for the legislation to permit populous counties more flexibility in acquiring bond approval is rational and will be upheld.

2. *Whether Chapter 403 violates equal protection.*

Appellant next argues that the statute as amended withdraws the power of electoral approval over bond issuance from the voters of Clark County, and as such unconstitutionally differentiates them from the class of voters in other counties. This argument is not persuasive. There is no constitutional right to vote on bond issues within this State. Pope v. Williams, 193 U.S. 621 (1904). It was not set forth in either the United States or the Nevada Constitutions. This claimed right was not preserved or retained by the people. *A fortiori,* only a reasonable basis for a classification which might differentiate between certain classes as to that voting right need be found. Board of Commissioners v. Board of Trustees, 325 N.E.2d

482 (Ind. 1975). Whatever right obtains is derived through the legislature, NRS 350.020, as bond elections are creatures of statute. The legislature, having once established the bond-issuance procedure, retains the right to subsequently modify that procedure subject, of course, to constitutional limitations.

Here, only the largest county(s) in the State is relieved of holding a bond election. The findings of fact, matters of common knowledge, and/or facts which may be judicially noticed cause this Court to determine that Nevada's larger and more populous county(s) faces demands of rapid growth and encounters diversified kinds of problems and needs in fulfilling the obligation of county hospital services than a rural county. There exists greater needs for more sophisticated services and specialized equipment, a need for more emergency treatment facilities, and the like. Clearly, Clark County must be in a position to attract and retain competent medical staff, particularly since the Southern Nevada Memorial Hospital is the county's only non-proprietary institution.

Further, the different authorizations for financing have a rational basis and thus *are not* arbitrary or unreasonable. *Cf.* City of Phoenix v. Kolodziesjki, 399 U.S. 204 (1970) (where only real property taxpayers were allowed to vote on general obligation bonds); Cipriano v. City of Houma, 395 U.S. 701 (1969) (only property taxpayers were allowed to vote on revenue bonds).

Where a provision of law will serve to further the welfare of the citizens of the State, the court must make every intendment in favor of the validity of the act. State v. Payne, 53 Nev. 193, 295 P. 770 (1931). Furthermore, considering this in conjunction with the facts justifying the distinguishment cause us to conclude that the legislative objective is vaild. *See,* McGowan v. Maryland, 366 U.S. 420 (1961).

There is no evidence that the legislature has acted arbitrarily or capriciously in attempting to permit a *class* of counties meeting specific, objective population qualifications the option of not obtaining electoral approval for a proposed bond issuance. The statute in question does not provide for differential voting rights *on the same issue,* nor allow voting rights' discrimination *within the class.* Appellant ignores the fact that all members of each county(s) within the class have equal rights

under this statute. The voters in those counties now or hereafter qualifying are not denied equal protection should their county elect to circumvent electoral authorization. Cantwell v. Hudnut, 419 F.Supp. 1301 (S.D. Ind., 1976); Lindauer v. Oklahoma City Urban Renewal Auth., 496 P.2d 1174 (Okla. 1972).

Finally, appellant contends that the General Obligation Bond Commission failed to comply with certain provisions of NRS 350.001 *et seq.,* and its action was therefore void. The relevant section reads: NRS 350.0035. "Each governing body of a political subdivision which has issued or contemplates issuing general obligation bonds shall submit to the commission, at least thirty days prior to its annual meeting in July, a complete statement of current and contemplated general obligation debt and a report of current and contemplated bond issuance and retirement schedules."

Notwithstanding our *Lindauer*[2] concerns, because of the exigencies present here, we have determined to treat this issue. The reporting requirement was waived by the Bond Commission, and we understand this to have been a general practice followed by the Commission. Appellant suggests the report is jurisdictional and mandatory and that the failure invalidates the proceedings; however, in these circumstances, with the Bond Commission being fully informed concerning Clark County's fiscal condition and plans (this being the doubtless legislative intent), we determine this contention to be without merit. State ex rel. Springmeyer v. Brodigan, 35 Nev. 35, 126 P. 680 (1912).

The judgment of the lower court is affirmed.

BATJER, C. J. and MOWBRAY and THOMPSON, JJ., concur.

GUNDERSON, J., concurring:

I concur in the result.

---

[2]Lindauer v. Allen, 85 Nev. 430, 456 P.2d 851 (1969) (holding: "This court can only consider the record as it was made and considered by the court below. . . .").