CITY OF LAS VEGAS, NEVADA, A MUNICIPAL CORPORATION, ORAN K. GRAGSON, MAYOR, PHILIP M. MIRABELLI, S. GRANT STEWART, JAMES COREY AND WESLEY G. HOWERY, BOARD OF COMMISSIONERS, APPELLANTS, v. JOHN ACKERMAN, RONALD ANDERSON, RALPH ARNTS, JUDITH BALLEW, BILLY D. BARBER, ET AL., RESPONDENTS.

No. 5886

July 31, 1969                                    457 P.2d 525

*Sidney R. Whitmore,* City Attorney, of Las Vegas, for Appellants.

*I. R. Ashleman,* and *Harry J. Mangrum, Jr.,* of Las Vegas, for Respondents.

## O P I N I O N

By the Court, BATJER, J.:

On July 11, 1968, five residents who were also electors in Las Vegas, Nevada, presented an affidavit stating that they would constitute the petitioners' committee for the purpose of circulating an initiative petition. Thereafter, a petition bearing approximately 11,500 signatures was submitted to the city clerk. On August 30, 1968, the city clerk certified that there were the required number of signatures affixed to the petition, and on October 2, 1968, the board of commissioners designated that a special election be held November 5, 1968 for a public vote on the proposed initiative ordinance. At the election 18,205 electors voted for and 14,674 voted against the proposed ordinance. Both parties stipulated that all applicable statutes concerning the municipal initiative process were duly complied with and that the ordinance in issue is a validly enacted ordinance of the city of Las Vegas, Nevada, unless otherwise unlawful.

The initiative petition as enacted provides as follows: "INITIATIVE PETITION—AN ORDINANCE PROVIDING FOR A WAGE INCREASE FOR FIREFIGHTERS OF THE CITY OF LAS VEGAS AND EQUALITY OF COMPENSATION OF FIREFIGHTERS AND PATROLMEN.

"The People of the City of Las Vegas, County of Clark, State of Nevada, do ordain that retroactive to the 1st day of July, 1968, the monthly wage of firefighters shall be increased by not less that $144.00.

"And further Ordain that in all cases firefighters shall be compensated at a monthly rate not less than that provided in the case of police patrolmen."

This appeal presents several issues which the appellants claim constitute reversible error. Their primary contention is that the fixing of the salaries of municipal employees is an administrative rather than a legislative function and is outside the scope of the initiative. They further contend that the ordinance as enacted is constitutionally unsound as being vague, ambiguous and uncertain; that it is void because it authorizes the city of Las Vegas to expend money which has not been allocated for such purpose in violation of NRS 354.626; that it is void because it unites future salary increases for firemen with future salaries of police patrolmen, in violation of Article 19 of the Nevada Constitution; that it is void because the classification of "firefighters" as against all other fire department personnel and all other classified employees is unreasonable and in violation of Article 1, Section 8 of the Nevada Constitution and the Fourteenth Amendment of the United States Constitution; that it is void because it is capricious, arbitrary, unfair and excessive in amount, and in violation of Article 1, Section 8 of the Nevada Constitution and the Fourteenth Amendment of the United States Constitution; and that the entire initiative ordinance is invalid because the invalid portions of such ordinance are inseparably connected to the remainder.

The respondents cross appealed from that portion of the judgment which declared void the retroactive effect of the initiative ordinance and its applicability only to those employees subjecting themselves to the risk and hazards of combating fires.

We affirm the judgment of the district court save and except that portion which declared the retroactive effect of the initiative ordinance void, and as to that portion we reverse.

1. The fixing of the salaries of municipal employees in the City of Las Vegas is a legislative function. The people have the power through the initiative process to enact legislation fixing such salaries. Parrack v. City of Phoenix, 329 P.2d 1103 (Ariz. 1958). We reach this conclusion because the charter of that city grants to the board of commissioners the power to fix by ordinance the salaries of its employees. When the board of commissioners, pursuant to the provisions of the Las Vegas City Charter created the civil service board, the office of personnel director, and city manager, it reserved the right to fix the salary of municipal employees by ordinance. The personnel director, civil service board and the city manager only recommend to the board of commissioners the salary schedule. The

City of Las Vegas Civil Service rules, section 220 provides: "The City Manager shall recommend a uniform and equitable pay plan to be approved by the City Commission which shall consist of minimum and maximum rates of pay for each grade and such intermediate rates as are necessary and equitable."

Here the board of commissioners could have passed a valid ordinance in the exact words of the initiative ordinance. If the board of commissioners could so act *a fortiori* a majority of the electors of the city of Las Vegas, deriving their power not from the city charter but from the Nevada Constitution, could validly pass the initiative ordinance. State ex rel. Davies v. White, 36 Nev. 334, 136 P. 110 (1913).

Article 1, Section 2, of the Nevada Constitution reads in part: "All political power is inherent in the people. Government is instituted for the protection, security and benefit of the people; and they have the right to alter or reform the same whenever the public good may require it. . . ." Article 19, Section 4, of the Nevada State Constitution reads: "The initiative and referendum powers provided for in this article are further reserved to the registered voters of each county and each municipality as to all local, special and municipal legislation of every kind in or for such county or municipality."

In Spencer v. City of Alhambra, 111 P.2d 910 (Cal.App. 1941), that court wrote: "It is a basic principle inherent in the American system of representative government, as declared in Article 1, section 2, of our state Constitution, that 'all political power is inherent in the people. Government is instituted for the protection, security and benefit of the people, and they have the right to alter or reform the same whenever the public good may require it.' From the foregoing, it follows that the legislative power of the municipality resides in the people thereof. By writing into the charter initiative and referendum laws, the people of the city have simply withdrawn from the legislative body and reserved to themselves the right to exercise a part of their inherent political power. We must therefore look to the provisions of the city charter to ascertain whether therein the people have excluded from the operation of the initiative the determination and fixing of salaries for members of the city police department.

"The initiative ordinance here in question does more than fix salaries of members of the police department. It establishes a scale of minimum salaries. Manifestly the ordinance sought to declare a public policy or purpose, to the effect that in the police department, concededly a vital arm of the public service, and the medium through which personal and property rights

are protected, the salaries paid the members of such department must not be fixed below a certain minimum, lest thereby the public interest and welfare might be adversely affected. That acts which constitute a declaration of public purpose and ways and means for the accomplishment thereof, are generally classified as calling for the exercise of legislative powers, was the holding of McKevitt v. City of Sacramento, 55 Cal.App. 117, 203 P. 132.

"When, therefore, the people phrased the foregoing sections pertaining to these powers in such broad, general and unambiguous language, the conclusion seems inevitable that thereby it was intended that legislation on every municipal subject should, unless expressly or by clear and necessary implication excluded by other sections, be subject to initiative action through the adoption of ordinances by the people. After all, the people through their charter have a right to vest in the voters of the city the right and power to deal through initiative action with any matter within the realm of local affairs or municipal business, whether strictly legislative or not, as that term is generally used (Hopping v. City of Richmond, 170 Cal. 605, 150 P. 977); and as heretofore noted, the consensus of authority is to the effect that the fixing of salaries of public officers is a legislative function. Certainly no other incident of municipal government engages more legislative attention."

2. In the declaratory judgment the district court said: "The Court defines a firefighter as one who subjects himself to the risks, dangers and hazards inherent in the defense of persons and property by his active engagement in the fighting of fires."

This definition and classification is not violative of Article 1, Section 8 of the Nevada Constitution or the Fourteenth Amendment of the United States Constitution because it rests upon reasonable grounds and substantial distinctions. Boyne v. State ex rel. Dickerson, 80 Nev. 160, 390 P.2d 225 (1964). We sanction and approve the district court's definition of a firefighter and reject the respondents' contention that the lower court erred when it limited the applicability of the initiative ordinance to those subjecting themselves to the risks and hazards of combating fires.

In Washington v. City of Boston, 187 N.E.2d 802 (Mass. 1963), fire apparatus repairmen, motor equipment repairmen and carpenters in the maintenance division of the city fire department were determined not to be "fire fighters" within statute granting salary increases to firefighters and uniformed fire alarm personnel employed by the city.

3. The trial court specifically rules that the initiative ordinance does not violate NRS 354.626. We agree and further find that the initiative ordinance does not violate any of the sections of NRS Chapter 354. NRS 354.470 recites that NRS 354.470 to NRS 354.626 inclusive may be cited as the "Local Government Budget Act." There is no way that those statutes can be construed as a limitation on the constitutional power of the electorate of the city of Las Vegas to pass the initiative ordinance. As pointed out by the trial court the Local Government Budget Act itself provides and allows for the adjustment of municipal budgets.

In State v. City of Spokane, 134 P.2d 950 (Wash. 1943), that court said: "As we understand it, respondents' contention that the proposed ordinance contravenes certain provisions of the budget law, Rem. Rev. Stat., §§ 9000–1 to 9000–11, is because, by its terms, it becomes effective immediately upon its adoption, and that, consequently, it would require the payment of salaries in excess of the amount provided for in the current budget. We think the clause in question has reference only to the time when the salary increase is to become effective—not as to how or when the increase may be paid in contemplation of the budget law. The latter problem is one to be solved by the city council if and when the ordinance takes effect. . . . We can find nothing in the budget act that even remotely affects the right of the electors to invoke the initiative provisions of the city charter upon ordinances such as that proposed."

The powers of People through the initiative process are not limited to the moment when the governing body of the municipality finally adopts the annual budget. Parrack v. City of Phoenix, supra.

4. We find that the remainder of the appellants' assignments of error are without merit. All presumptions are in favor of legislative enactments, whether they flow from the legislative halls or from the electorate through the initiative process. State ex rel. Keyser & Elrod v. Hallock, 14 Nev. 202 (1879); Ormsby County v. Kearney, 37 Nev. 314, 142 P. 803 (1914); State v. Com's. Humboldt Co., 21 Nev. 235, 29 P. 974 (1892); State v. Westerfield, 24 Nev. 29, 49 P. 554 (1897).

In T. & G. R. R. Co. v. Nev. Cal. T. Co., 58 Nev. 234, 75 P.2d 727 (1938), this court said: "There is no better known rule than that every act of the legislature is presumed to be constitutional, unless it be the one to the effect that no act will be held unconstitutional unless it is clearly so."

As it was aptly stated by the trial court: "It is not the function of the Court to question the wisdom of the public, but to determine whether or not they have lawfully enacted the measure in issue." In Turner v. Fogg, 39 Nev. 406, 159 P. 56 (1916), this court quoted with approval the reasoning of the Pennsylvania Supreme Court: "If it were our duty to make the law, no doubt some of its provisions would be written differently, but we cannot declare an act void because in some respects it may not meet the approval of our judgment, or because there may be difference of opinion as to its wisdom upon grounds of public policy. Questions of this character are for the legislature, and not for the courts."

5. We now turn to consider the respondents' contention that the trial court erred when it held that the initiative petition was effective only from and after November 5, 1968, and could have no retroactive application. We find no statutory enactment or constitutional provision that would preclude the initiative ordinance from becoming effective July 1, 1968, and reverse that part of the declaratory judgment which fixed November 5, 1968 as the effective date.

In opposition to the retroactive effect of the initiative ordinance the appellants have cited several cases from other jurisdictions. However, in each of those jurisdictions there existed a specific constitutional prohibition against either a retroactive application of a statute or a prohibition against a gratuity by the state or a governmental subdivision to an individual. In some jurisdictions retroactive salary payments have been allowed in spite of rather clear constitutional prohibitions against them. Christie v. Port of Olympia, 179 P.2d 294 (Wash. 1947); Timmerman v. City of New York, 69 N.Y.S.2d 102 (1946), and State ex rel. Haberlan v. Love, 131 N.W. 196 (Neb. 1911). In Nevada there is a constitutional prohibition against the granting of a gratuity to a corporation by the state but no prohibition exists to bar the granting of retroactive salary to an individual. Article 8, Section 9, Nevada Constitution.

In reaching its decision the trial court said: "Prior to that time [November 5, 1968] members of the fire department were each under a contract of employment with the City of Las Vegas as provided for under the rules and regulations of the Civil Service Board as adopted by the Board of Commissioners, by ordinance."

When the initiative ordinance was enacted it superseded the existing ordinance. The contract between the city and the affected employees was fulfilled and terminated on November 5, 1968. We must look solely to the new ordinance for the determination of its validity.

The appellants contend that any increase in pay from July 1, 1968 to November 5, 1968 is a gratuity. In an analogous situation involving a pension, the Supreme Court of North Carolina in Great American Insurance Company v. Johnson, 126 S.E.2d 92 (N.C. 1962), said: "A pension paid a governmental employee for long and efficient service is not an emolument which, by Art. I, sec. 7, of our Constitution, cannot be paid. To the contrary it is a deferred portion of the compensation earned for services rendered." In Haldeman v. Hillegass, 6 A.2d 801 (Pa. 1939), the court, when considering retirement pay said: "This is in effect an acknowledgment by the legislature of prior service, and a recognition by it that long and faithful public employment should be compensated, emphasizing the purpose and scope of the provisions for retirement pay or delayed compensation."

While there is no prohibition against a municipality granting a gratuity, we find more specifically that the retroactive increase in salary for firefighters as allowed in the initiative ordinance is in no way prohibited by any constitutional or statutory provision and it makes very little difference what the payment is to be, however, we prefer to view it as a deferred portion of the compensation earned for services rendered.

While the trial judge did not specifically declare the retroactive effect of the ordinance unconstitutional or void he did deem it "unenforceable," yet no authority was cited for that conclusion. In State v. Appling, 361 P.2d 86 (Ore. 1961), that court held: "The legislative power which has been vested in our state legislature by the people is plenary and complete except as that power is limited by the state constitution itself, or by the federal constitution. As stated by Justice Lusk, speaking for this court in State ex rel. Chapman v. Appling, 1960, 220 Or. 41, 47, 348 P.2d 759, 762, 'a state constitution does not confer power on the legislature, but is a limitation on power, and therefore it is competent for the legislature to enact

any law not expressly or impliedly forbidden by the state constitution or prohibited by the Constitution of the United States. . . .' "

In 1853 the Supreme Court of Pennsylvania in Sharpless v. Mayor, 21 Pa. 147 (1853), succinctly stated: "The constitution allows the legislature every power which it does not positively prohibit. The wisdom, justice or expediency of the passage of an act of the legislature is not the subject of debate in our courts of justice."

The electorate of Las Vegas, Nevada, acting in a legislative capacity, had the unimpaired power to enact the initiative ordinance in the form and manner as it is found in the record and we find it to be constitutionally sound.

This case is remanded to the district court for an amendment of the declaratory judgment in conformity with this opinion.

COLLINS, C. J., ZENOFF and THOMPSON, JJ., and CRAVEN, D. J., concur.