Thomas M. Stark, J.
This is an action in which the plaintiff (hereinafter called the “ Board ”) seeks a judgment declaring illegal certain provisions of two agreements between the parties dated June 10, 1968 and September 16, 1969. The Board also seeks to enjoin the defendant (hereinafter called the “ Asso *907 ciation ”) from grieving or arbitrating any matters arising out of the contested provisions.
The matter comes before the court on plaintiff’s motion for an injunction pendente lite and defendant’s cross motion for a dismissal of the complaint. There are no issues of fact presented and accordingly both motions will be treated as motions for summary judgment.
On September 1, 1967, there became effective the Public Employees’ Fair Employment Act (Civil Service Law, art. 14), commonly known as the Taylor Law. The Board, as a public employer under this law, recognized and certified the Association as the employee organization representing the school district teachers in negotiations and the settlement of grievances. The Board and the Association thereafter entered into collective negotiations for the purpose of determining the terms and conditions of employment of the teachers for the school year 1968-1969. These negotiations resulted in the written agreement between the Board and the Association dated June 10, 1968. Negotiations were subsequently undertaken for the same purpose for the school year 1969-1970. Disputes arose between the parties and on April 22, 1969, the New York State Public Employment Relations Board appointed a fact-finding panel to inquire into the disputes and to make recommendations for their resolution.
The fact-finding panel made its recommendations on July 22, 1969, and on September 16, 1969, the Board and the Association entered into a written settlement agreement which basically was an acceptance by both parties of the recommendations of the fact-finding panel. The final agreement which determined the terms and conditions of employment for the school year 1969-1970 is basically a combination of the 1968-1969 agreement, the recommendations of the fact-finding panel, and the settlement agreement of September 16, 1969.
The Board in this action raises the question as to its own power to agree and bind itself to certain provisions of the 1968-1969 and 1969-1970 agreements. Four of the questioned provisions relate to the payment of teachers’ monetary benefits in the form of either salary increases or reimbursement of certain expenses. The fifth questioned provision relates to certain actions affecting tenure teachers being made subject to the grievance procedure of the agreement. As to the first four questioned provisions the Board’s position is that it is without legal power or authority to pay these monetary benefits to the teachers. As to the fifth questioned provision the Board’s position is that it is without legal power or authority to subject *908 certain actions affecting tenure teachers to the grievance procedure of the agreement.
The first two provisions challenged are the agreements made in sections E and F of article VIII relating to the protection of teachers (the language of these provisions is the same in the 3968-1969 and 1969-1970 agreements). These provisions read as follows:
“ E. The Board will provide protection of teachers by reimbursement for cost of' replacing or repairing dentures, eyeglasses, etc., not covered by Workmen’s Compensation, destroyed or lost as the result of an injury sustained in the course of his or her employment.
“ F. The Board will provide reimbursement for repair or value, whichever is less, of clothing and personal effects damaged or destroyed during the course of and incident to employment, provided loss is not caused by negligence of the claimant. Personal effects do not include automobiles and/or other vehicles. ’ ’
The next provision challenged is section A of article XI relating to professional development. In the 3968-3969 agreement this provision read as follows:
‘1 A. Graduate Courses
“ Any member of the professional staff shall have his salary increased for one year only in the amount of twenty dollars per college or university credit hour up to a maximum of eight hours per year upon presentation of an official transcript of credit. Courses must be approved in advance by Principal and Superintendent. ’ ’
In the 1969-1970 agreement this provision was changed to read as follows:
“A. Graduate Courses
“ Any member of the professional staff shall, upon presentation of his transcript and a bursar’s receipt, be reimbursed in a lump sum in an amount equal to 50% of the cost per credit hour of such work up to a maximum of ten hours per year; provided the courses are of a content related to the curriculum or course of study taught by the teacher and are approved in advance by the Principal and Superintendent. The benefits provided above may be extended to other courses with the approval of the Superintendent.”
The next provision challenged is article XXI relating to the retirement award (the language of this provision is the same in the 1968-1969 and 1969-1970 agreements). This provision reads as follows:
‘ ‘ Retirement Award
*909 “ Bach teacher who hereafter indicates his intention to retire one year prior to such retirement under the New York State Teachers Retirement System or whose retirement is mandatory under such system shall receive at the start of the last school year of service a salary increase for that year equal to 5/10 of 1% (0.5%) of his current salary multiplied by the number of years of service in this school district, such salary increase not to exceed $1500.”
The remaining provision challenged is section C of article XVIII relating to teacher evaluation (the language of this provision is the same in the 1968-1969 and 1969-1970 agreements). This provision reads as follows:
“ C. No tenure teacher shall be disciplined, reprimanded, reduced in rank or compensation, suspended, demoted, transferred, terminated or otherwise deprived of any professional advantage without just cause. In no case shall this be done publicly unless so requested by the teacher. Any such action, including adverse evaluation of teacher performance or a violation of professional ethics asserted by the Board or any agent thereof, shall be subject to the grievance procedure set forth in this Agreement, provided that in the case of a non-tenure teacher, termination shall not be grievable. ’ ’
The Board initially raised the question of the legality of these provisions during the negotiations leading up to the 1969-1970 agreement, and sought legal opinions from the Division of Legal Services of the New York State Department of Audit and Control (as to the payment of the particular teachers’ monetary benefits) and from the New York State Department of Education (as to the tenure teachers-grievance procedure matter).
On April 17, 1969, the State Comptroller, in answer to the Board’s inquiry, rendered a written opinion (File No. 69-39) concluding that: (1) a school district, other than a city school district may not reimburse or insure teachers against a loss of personal property other than those losses covered by the Workmen’s Compensation Law; (2) a school district may not reimburse teachers for graduate education courses taken by the teachers; and (3) a school district may not grant a final year’s bonus in the form of extra pay in the year of a teacher’s retirement.
On May 29, 1969, the Associate Counsel of the Education Department, in answer to the Board’s inquiry, rendered a written opinion concluding that the Board could not legally agree to the provision making certain actions affecting tenure teachers subject to the grievance procedure.
*910 The Board submitted these opinions to the fact-finding panel, which thereafter considered them and stated its position as follows: “We are of the opinion that these are just legal opinions, not determinations by courts of last resort. Or to put it another way, we are not the proper body to determine whether these opinions are in fact the law * * * Accordingly, we shall make no legal judgments on these matters, but intend to consider the issues on the merits. This performance of our statutory duty should in no way be considered a determination of the legality or illegality of these provisions. If these provisions are incorporated in the agreement and later found illegal by an appropriate court, the parties have a separability clause in their contract to protect them.”
Upon the argument of the motion and cross motion this court permitted the Comptroller of the State of New York, the New York State Teachers Association and the New York State School Boards Association to submit briefs amicus curiae, and such briefs have been considered along with the briefs of the main parties.
School districts, like all local governments, are creatures of State legislation. All of the powers, authority, duties and responsibilities of such units of local government are derived from statute. The Education Law is the basic statute by which the Legislature has created various types and classifications of school districts. The most prevalent types are common school districts (art. 33), union free school districts (art. 35), central school districts (art. 37) and city school districts (arts. 51 and 52). Such districts are governed by bodies corporate known as boards of education (or board of trustees in the case of common. school districts), and the powers and duties of such boards are set forth in various sections of the Education Law. Additional statutory powers of school districts may be found in other chapters of the consolidated laws, e.g., the General Municipal Law, the Civil Service. Law, and the Local Finance Law.
The threshold question of law raised on these motions is-whether a board of education, as a public employer engaged under the Taylor Law in collective negotiations with its teachers to determine the terms and conditions of the teachers’ employment, may, by reason and authority of the Taylor Law itself, agree and bind itself to terms and conditions of .employment in the form of employee rights and benefits not otherwise authorized by law.
The only reported post-Taylor Law case which raises this question is, Matter of Teachers Assn., Cent. High School Dist. No. 3 (Board of Educ.) (61 Misc 2d 492). There a Board *911 of Education and a teachers association had agreed (presumedly in a Taylor Law agreement) that if a teacher voluntarily left the employ of the school district he would be paid the monetary value of his accumulated unused personal sick leave. The court held that the Board of Education had no authority to make such agreement. In addition to its own analysis of the various statutes, the court referred to several opinions of the State Comptroller stating (1) that article 14 of the Civil Service Law did not enlarge the legal benefits which public employers may confer on their employees (23 Op. St. Comp., 1967, p. 649), and (2) that provisions for the payment of unused sick leave in a Taylor Law agreement would be invalid and not binding on the school district (25 Op. St. Comp., 1969, p. 37).
The enactment of the Taylor Law was a legislative determination of the public policy of the State that public employees through their chosen organizations were to have the right to fully participate in the process of determining, through collective negotiations with their employers, all of the terms and conditions of their employment. The law applies to all units of government within the State, and to all categories of appointed or employed public employees.
The act cannot be read, however, as granting public employers and employee organizations the right to agree and bind themselves to terms and conditions of employment not otherwise authorized by law. This is clear from a reading of section 204-a of the Civil Service Law which provides:
“ 1. Any written agreement between a public employer and an employee organization determining the terms and conditions of employment of public employees shall contain the following notice in type not smaller than the largest type used elsewhere in the agreements:
‘ It is agreed by and between the parties that any provision of this agreement requiring legislative action to permit its implementation Toy amendment of law or by providing the additional funds therefor, shall not become effective until the appropriate legislative body has given approval’” (emphasis supplied).
It thus appears that the Taylor Law contemplates that the mutual determination of the terms and conditions of employment shall be as broad as possible, but where an agreed-upon term or condition of employment is not authorized by State law, the binding effect of such particular term or condition must await the action of the Legislature.
*912 Accordingly this court must look beyond the Taylor Law to determine whether the questioned provisions of the agreements in this case are binding under existing statutes.
The first questioned provision relates to the reimbursement to teachers of the cost of replacing dentures, eyeglasses, etc. destroyed or lost as a result of an injury sustained in the course of employment, when reimbursement for such devices is not provided under the Workmen’s Compensation Law. The apparent reason for such provision is the rule, as stated in Matter of Geiger v. Bell Aerosystems Co. (28 A D 2d 178), that an accident to a medical device is not compensable, unless the claimant suffers a physical bodily injury and an injury solely to a medical device does not constitute bodily injury. It would appear that the intent of the Board and the Association in agreeing to this particular provision was to reimburse teachers for such devices in cases where an accident had occurred in the course of the teachers’ employment damaging the device but resulting in no physical bodily injury to the teacher. If the accident involved both damage to the device and physical bodily injury, compensation would clearly he made by the Board’s insurance carrier (Matter of La Rose v. Hof, 28 A D 2d 185), and this particular provision of the agreement would be inoperative.
The second questioned provision relates to the reimbursement to teachers of the cost of repair or replacement of clothing and personal effects damaged or destroyed in the course of and incident to employment.
The Comptroller’s opinion as to both questioned provisions is that there is no statutory authority for a union free school district to reimburse a teacher in either instance. This opinion fails to consider however the broad authority given to the boards of common, union free and central school districts under certain provisions of the Education Law.
Subdivision 27 of section 1604 of that law grants power to the trustees of common school districts: “ To reimburse members of the teaching and supervising staff for expenses actually and necessarily incurred in the performance of their official duties and to make such rules and regulations in relation thereto as they shall deem necessary and proper.”
This same power is granted to the hoards of education of union free school districts and central school districts by section 1710 and subdivision 1 of section 1804 of the Education Law.
The language of the statute is sufficiently broad to authorize reimbursement of various types of ‘ ‘ expenses actually and *913 necessarily incurred in the performance of their official duties.” If a teacher’s eyeglasses were damaged in the course of breaking up an altercation between students, or if a teacher’s clothing were damaged by the accidental spilling of acid by a student in the laboratory, it seems clear to this court that the cost of repairing or replacing the damaged items could lawfully be reimbursed by the school district pursuant to reasonable .rules and regulations adopted under this statute.
Accordingly this court holds and declares that the agreements made in sections E and F of article VIII are terms and conditions of employment concerning which the Board has lawful power to agree and bind itself.
The third questioned provision relates to payments to teachers, either in the form of salary increases (1968-1969 agreement), or lump sum reimbursement (1969-1970 agreement), in either dollar amounts or percentage of cost, for credit hour charges incurred for the taking and completion of graduate courses. The Comptroller’s opinion as to these provisions is that school districts have no statutory authority to make such payments, and that .such payments, even if authorized by law, would be an unconstitutional gift under the provisions of the New York State Constitution (art. VIII, § 1).
This court finds no statutory authority, either expressed or implied, for the Board, under the facts of this case, to make such payments either as a salary increase or as a straight expense reimbursement. If such payment is to be considered a salary increase (as the 1968-1969 agreement provides) it is not within the definition of ‘ ‘ salary ’ ’ as defined in subdivision 3 of section 3101 of the Education Law. That provides, in part: 11 ‘ Salary ’ shall mean the amount of compensation that is to be paid to a teacher for services rendered during the full ten months period that the public schools of the district are required by law to be in session during any school year.” (Emphasis supplied.)
The taking of graduate courses, either part-time during the school year or full-time during the months of July and August, is not ‘ ‘ services rendered ’ ’ to the school district so as to entitle the teacher to compensation in the form of a salary increase representing the partial cost of such courses, unless some term or condition of employment requires the teacher to take such courses as part of his or her over-all services rendered to the school district.
If the payment for graduate courses is considered to be a straight expense reimbursement (as the 1969-1970 agreement provides), the only statutory authority for the Board to make *914 such payment would be the language of subdivision 27 of section 1604 of the Education Law. In this event howevór the expense for graduate courses would have to be “ necessarily incurred in the performance of their official duties ”, which implies some term or condition of employment requiring the teacher to take such courses as part of the performance of his or her official duties.
No showing is made in the record herein that the Board has adopted a policy of requiring a teacher under contract of employment to undertake graduate studies during the period of employment. Nor is there any such requirement for graduate study as a negotiated term or condition of employment found in either the 1968-1969 or 1969-1970 agreement.
The taking of graduate courses by a teacher and the resultant benefits both to the school district and the teacher has been legislatively recognized and encouraged by the enactment of subdivision 3 of section 3103 of the Education Law, which mandates a minimum $300 differential on the salary schedule for teachers completing either 30 or 60 semester hours of approved study beyond the baccalaureate degree. A school district may of course agree to pay a salary differential for completion of any specified semester hours of graduate study in an amount higher than that required by law (Education Law, § 3102, subd. 3). The 1968-1969 teacher’s salary schedule negotiated between the Board and the Association provides a differential of $700 between BA and BA+ 30, and of $800 between BA + 30 and BA + 60, with intermediate differentials reflecting BA +15, MA, MA + 30, MA + 45, MA + 60, and PhD. All of these differentials reflect the increased professional competence of the teacher, upon the completion of the courses or of the award of the graduate degree, and the payment thereafter of higher salary is commensurate with the increased benefit of such teacher’s services rendered to the school district. The law, however, does not require or mandate any, certified teacher to pursue graduate studies if he or she does not choose to do so.
The mutual intention of the Board and the Association to encourage the professional development of the teachers by part payment of graduate course tuition is laudable. Under the law as it stands however, the action of the Board is ultra vires as long as the taking of the courses is optional with the teacher.
If such payments were authorized by law, this court is of the opinion that they would not constitute an unconstitutional gift. *915 The prohibition of section 1 of article VIII of the New York State Constitution is that:
“No * * * school district shall give or loan any money or property to or in. aid of any individual ’ ’.
Boards of education are specifically authorized to provide and pay for in-service training for their teachers (Education Law, § 1709, subd. 32). Such boards are specifically authorized to pay the expenses of their employees’ attendance at schools conducted for the betterment of municipal government if believed to be of benefit to the school district (General Municipal Law, § 77-b). Payments under either of these statutes would incidentally be “ in aid of ” the individual teacher or employee, but could hardly be deemed an unconstitutional gift of public moneys in view of the language of section 14 of article XIH, of the New York State Constitution. Under this latter provision the State Legislature has broad powers to enact legislation concerning the compensation and benefits of all public employees, including school teachers.
Accordingly this court holds and declares that the agreements made in section A of article XI (in both the 1968-1969 and 1969-1970 agreements) are terms and conditions of employment concerning which the Board has no lawful power to agree and bind itself.
The fourth questioned provision relates to the payment of a retirement award in the form of increased salary, (with a maximum of $1,500) to a teacher during the final year prior to retirement. The Comptroller’s opinion as to this provision is threefold: (1) that such payment is a “retirement plan” created contrary to section 113 of the Retirement and Social Security Law and section 526 of the Education Law, (2) that such payment is in violation of the equal protection clauses of the United States and New York State Constitutions in that same is unreasonable, arbitrary and without any rational basis, and (3.) that such payment would be an unconstitutional gift under section 1 of article VIII of the New York State Constitution.
Upon the argument of these motions the Comptroller basically concedes that the ‘ ‘ retirement award ’ ’ is not in reality a “ retirement plan ” and his original opinion in that regard will not be considered. It is clearly evident to the court that neither section 113 of the Retirement and Social Security Law nor section 526 of the Education Law prohibits the payment of this final year salary increase even though it is termed a “ retirement award ”.
*916 Nor is there any basis for finding the payment in violation of the equal protection clause. A board of education is granted broad authority to determine and agree to teachers’ salaries in any amounts above the State minimum as long as no differentiation is made on the basis of sex (Education Law, § 3102, subd. 3). This would include the authority to establish a so-called ‘ ‘ merit system ’ ’ which differentiates between teachers of the same educational background who are on the same salary step of the schedule. (Matter of La Penna v. Union Free School Dist. No. 9, 20 A D 2d 366; Matter of Mandeville, 1 Ed. Dept. Rep. 599.)
The final year salary increase in these agreements is solely and simply additional compensation paid to the teacher for services during his or her last year of service. It is clearly within the category of ‘ ‘ higher salaries and more frequent, larger or additional increments ” authorized by subdivision 3 of section 3102 of the Education Law. It is not arbitrary, in that it is granted to all teachers either eligible or required by law to retire. Nor is it unreasonable, nor does it lack any rational basis. It is not a subterfuge or scheme to increase the amount of the pension to be received under the State Teachers Retirement System. Subdivision 11 of section 501 of the Education Law provides: “ ‘ Final average salary ’ shall mean the average regular compensation earned as a teacher during the three years of actual service immediately preceding his date of retirement * * * exclusive of any lump sum payments for sick leave, annual leave or any other form of termination pay ” (emphasis supplied).
Nor is the payment of the retirement award an unconstitutional gift. In Matter of Boyd v. Collins (11 N Y 2d 228) relied upon the Comptroller, the teacher was paid her final year’s salary for not actually teaching, which was clearly an unconstitutional gift. In order to receive the retirement award in this case the teacher must render full and complete teaching services during the final year. The fact that the award is computed by a multiplication of the number of prior years’ service in the school district does not make the award a gift for past services. A final year salary increment, somewhat similar to the one under consideration, was held to be constitutional in Herreboudt v. Board of Educ. (41 Misc 2d 547). A contrary conclusion, based on the Comptroller’s opinion, was found by the court in Central School Dist. No. 4 v. Bellport Teachers Assn. (N. Y. L. J., April 28, 1970, p. 19, col. 4 [Sup. Ct. Suffolk County, McInerney, J.]).
*917 Accordingly this court holds and declares that the agreement made in article XXI is a term and condition of employment concerning which the Board has lawful power to agree and bind itself.
The fifth and last questioned provision relates to certain administrative actions affecting tenure teachers being made subject to the grievance procedure of the agreement.
In 1962 the Legislature enacted article 16 of the General Municipal Law establishing a mandatory employees’ grievance procedure in all units of local government, including school districts, having one hundred or more employees. There is no indication in the record before this court that the plaintiff, prior to October 1, 1963, had established any grievance procedure differing from that mandated by article 16 of the General Municipal Law. Accordingly, for the purpose of these motions, this court must assume that the grievance procedure established by the Board pursuant to article 16 was administered in accordance with section 683 (formerly § 603) and section 684 (formerly § 604) of the General Municipal Law.
The purpose of this legislation, as declared in section 681, was: “ In order to establish a more harmonious and cooperative relationship between government and its public employees, it is hereby declared to be the purpose of this article to provide by law for the settlement of certain differences between public employees and their employers through procedures under which employees may present grievances, free from coercion, interference, restraint, discrimination or reprisal.”
The scope of the term “ grievance ” was defined in subdivision 4 of section 682 and means: ‘1 any claimed violation, misinterpretation or inequitable application of the existing laws, rules, procedures, regulations, administrative orders or work rules of a government o.r a department or agency thereof, which relate to or involve employee health or safety, physical facilities, materials or equipment furnished to employees or supervision of employees; provided, however, that such term shall not include any matter involving an employee’s rate of compensation, retirement benefits, disciplinary proceeding or any matter which is otherwise review able pursuant to law or any rule or regulation having the force and effect of law.” (Emphasis supplied.)
Prior to the enactment of the Taylor Law, the Appellate Divisions have twice ruled as to the applicability of article 16 to disputes between teachers and employers. In Matter of Pinto v. Wynstra (22 A D 2d 914) it was held that a probationary teacher who was denied tenure and whose services were tef *918 minated was not entitled to utilize the grievance procedure of article 16 to press a claim of maladministration against her principal. The court pointed out that the teacher’s real complaint was her being denied tenure, that the Education Law specifically permitted the discharge of a probationary teacher without cause and without a hearing, and that use of the grievance procedure for her purposes would be a circumvention of the Education Law. Matter of Van Heusen v. Board of Educ. (26 A D 2d 721) involved a dispute between a tenure secondary school teacher and his employer as to his assignment as a study hall supervisor rather than as a mathematics teacher. The court held that disputes as to work assignments are not matters fitting within the category of grievances as defined in article 16.
The Taylor Law, enacted five years after article 16 of the General Municipal Law, did not modify or expand the definition of ‘ ‘ grievance ’ ’ contained in section 682 of the General Municipal Law. The Taylor Law clearly requires that public employers and employee organizations negotiate collectively in the administration of grievances arising under the terms and conditions of employment, but in no way attempts to define what is or what is not a grievance.
In the 1968-1969 agreement the parties defined a grievance as ‘ ‘ a claim which involves the interpretation and application of the terms and provisions of this agreement ”.
In the 1969-1970 agreement the parties change the definition of grievance .so the same reads as follows: “A grievance is defined as: (1) A dispute or difference between the parties which may be processed up to and including step two of the grievance procedure, or (2) A dispute or difference between the parties as to the application and/or interpretation of the terms of this agreement, which may be carried to arbitration ”.
Presumably the ‘ ‘ dispute or difference ” of a tenure teacher who had been disciplined in some manner would be a claim that the action was done ‘1 without just cause” and therefore a matter relating to the ‘ ‘ application ’ ’ of the agreement (which requires just cause) which could be eventually carried to final and binding arbitration.
The Legislature, in section 682 of the General Municipal Law, has specifically excluded any “ disciplinary proceeding” from the definition of the term 1 ‘ grievance ’ ’. It has however included as a “ grievance ’ ’ any claimed ‘ ‘ inequitable application ” of rules, procedures, regulations, etc., which relate to or involve the “ supervision of employees ”.
It appears to the court, therefore, that any action in the nature of a disciplinary proceeding affecting a tenure teacher *919 may not lawfully be made subject to the grievance procedure established under article 16 of the General Municipal Law. However, actions relating to the supervision of such teachers, including nondisciplinary transfers or adverse evaluation of performance would appear to be proper subjects of such grievance procedure.
The termination of a tenure teacher’s employment (as distinguished from disciplinary proceedings not resulting in termination) is a matter which is specifically reviewable pursuant to laws other than article 16 of the General Municipal Law, and thus is an excluded matter under section 682. Sections 3012 and 3013 of the Education Law provide that teachers appointed on tenure shall hold their respective positions during good behavior and competent and efficient service and shall not be removed except for certain specified causes. These sections contain detailed mandates as to the preferral of charges, the scheduling of hearings and the conduct of such hearings. If a teacher is dismissed after such hearing it is provided that- ‘ ‘ the teacher shall have the right to review the determination of the board of education either by appeal to the commissioner pursuant to article seven of this chapter or by a special proceeding under article seventy-eight of the civil practice law and rules.”
As to the determination of the Board dismissing or removing a tenure teacher from his or her position for cause pursuant to section 3012 and section 3013 of the Education Law, it is clear to this court that such action may only be reviewed by either appeal to the Commissioner of Education or by an article 78 proceeding and that the Board’s action may not lawfully be made subject to the grievance and binding arbitration procedures of the agreements considered herein.
Accordingly this court holds and declares that: (1) the agreements made in section C of article XVIII insofar as they subject actions in the nature of a disciplinary proceeding to the grievance procedure are a term and condition of employment concerning which the Board has no lawful power to agree and bind itself; (2) the agreements made in said section and article, insofar as they subject actions relating to the supervision of teachers, including nondisciplinary transfers or adverse evaluation of teacher performance, to the grievance procedure, are a term and condition of employment concerning which the Board has lawful power to agree and bind itself; and (3) the agreements made in said section and article, insofar as they subject the action of the Board in dismissing or removing a tenure teacher to the grievance procedure, are a term and condition of *920 employment concerning which the Board has no lawful power to agree and bind itself.
'Summary judgment is granted to the plaintiff to the extent of declaring illegal (1) the provisions of section A of article XI (in both agreements) and (2) those separate provisions of section C of article XVIII, above indicated to be illegal.
Summary judgment is granted to the defendant to the extent of declaring legal (1) the provisions of sections E and F of article VIII, (2) the provisions of article XXI, and (3) those separate provisions of section C of article XVIII, above indicated to be legal.