[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
Before the Court are plaintiffs' requests for declaratory relief and injunctive relief. The plaintiff, in Counts I through V of the complaint, request that this Court declare certain actions of the Employee Retirement Board of Providence (hereinafter "Board") null and void. In addition, the plaintiffs request that this Court enter a temporary restraining order and a preliminary and permanent injunction enjoining and restraining the Board from taking any further action contrary to the enabling statute of the Providence Home Rule Charter. On May 1, 1990 an Order was entered granting plaintiff's Motion for a Preliminary Injunction to maintain the status quo and enjoin the defendants from taking any further action pursuant to the following decisions reached by the Board. Jurisdiction in this Court is pursuant to R.I.G.L. § 9-30-1.
Specifically, the actions of the Board preliminarily enjoined and allegedly in violation of the law are as follows:
I. At a meeting held on December 6, 1989, the eleven-member Retirement Board took action by a 6-5 vote to the effect that:
 a.) The City would be liable for any deficiency in any members individual retirement allowance resulting from the City's failure to deduct eight percent (8%) of the member's compensation;
 b.) all Class A employees and all beneficiaries of Class A employees who retired or died prior to January 1, 1990 would on February 1, 1990, receive a cost of living retirement adjustment in the amount equal to three percent (3%) of the retirement allowance, and would receive an additional three percent (3%) in each succeeding year thereafter;
 c.) all Class A employees and all beneficiaries of Class A employees who retire or die on or after January 1, 1990 would on the first day of January next following the first anniversary date of such retirement, receive a cost of living retirement adjustment in the amount equal to three percent (3%) of the retirement allowance, and would receive an additional three percent (3%) in each succeeding year thereafter;
 d.) the minimum age for service retirement for Class A employees would be age 55 or the age at which 20 years of service is complete;
 e.) all retired Class B employees and all beneficiaries of Class B employees who have retired or have died, would on the first day of January of the year following the date of retirement or decease, receive a cost of living retirement adjustment in the amount equal to six percent (6%) of the retirement allowance, and would receive an additional six percent (6%) in each succeeding year thereafter;
 f.) all retired Class B employees and all beneficiaries of Class B employees who have retired or have died, would have a minimum pension of $1,000 per month;
 g.) 42 police and fire department employees would receive longevity increases in their pensions.
(Stipulation of Facts — appended to this decision)
Previously, at an October 26, 1989 meeting the Retirement Board took actions to the effect that:
 a.) Dorothy Fraioli, Lucretia Ciolli, and Mark Mulcahey be given accidental disability pensions;
 b.) Simone Checharian, age 60, be permitted to borrow $2,500 against his contributions to the Retirement System;
 c.) Joseph Capraro and Eugene Hassel each be permitted to withdraw excess additional contributions from the Retirement System to apply the funds to outstanding loans owned to the Retirement System.
(Stipulation of Facts)
The parties entered into a Stipulation of Facts which were submitted to this Court along with the pleadings and various exhibits which serve as the evidentiary basis for this decision.
In 1923, the General Assembly permitted the creation of a municipal employee retirement system in the City of ProvidenceD.C. 1923, Chapter 489 (hereinafter the "Act"). In Section 3 of the Act, a retirement board was created in order to administer and operate the retirement system and "from time to time establish rules and regulations for the administration and transaction of the business of the retirement system. . . ." In essence, Section 3 of the enabling legislation created a board possessing general but limited administrative powers. Consequently, from 1923 until 1983 when the Providence Home Rule Charter became effective after ratification, the Retirement Board exercised basically "ministerial," administrative functions as delegated to it by the Act. Kritz v. Cianci, 474 A.2d 1248, 1249 (R.I. 1984).
The Providence Home Rule Charter, adopted by the residents of the city of Providence in 1980, significantly changed the function of the Retirement Board. Section 908(b) of the Charter provides:
. . . The powers and duties of the retirement board shall be, without limitation, the following: (1) To establish rules and regulations for and be responsible for the administration and operation of the city employee retirement system under its jurisdiction. . . .
This Section 908 granted plenary authority regarding the city employee retirement system to the Retirement Board. Said section was then specifically ratified by the General Assembly in Section 1 of P.L. 1981, Chapter 37 which provided that "Sections 201, 204, 208, 209, 707, 908, 1210 and 1404 are ratified, confirmed and validated."
The court has previously recognized the right of the General Assembly to grant permission to a municipality to legislate in an area already regulated by the general law when it ratifies or validates any provision in a home rule charter. Local 799,I.A.F.F. v. Napolitano, 516 A.2d 1347, 1349 (R.I. 1986). Similarly, the court has denied to the General Assembly the right to legislate regarding a local matter of a municipality governed by a ratified home rule charter unless the General Assembly (1) enacts general legislation applicable to all cities and towns in Rhode Island or (2) enacts special legislation that is then submitted to and approved by a majority of the qualified voters of that city or town at a general or special election. Bruckshawv. Paolino, 557 A.2d 1221, 1223 (R.I. 1989). In Bruckshaw,P.L. 1985, Chapter 468, entitled "An Act Relating to Retirement of Employees of the City of Providence" (hereinafter the "1985 Retirement Act"), as an example of such impermissible General Assembly legislation regarding a local matter, was ruled invalid and unenforceable. At issue here was the legality of a Retirement Board action denying an employee's application to pay into the retirement system to buy back credit toward retirement. Said employee's request was permissible per the 1985 Retirement Act. However, the court held that the Retirement Board properly denied the applicant's request. Upholding the Retirement Board action, the court determined that:
. . . (1) the Providence Home Rule Charter vests authority in the Employee Retirement Board of Providence to regulate city employee pensions, (2) the General Assembly ratified Providence's Home Rule Charter, (3) the regulation of city employee pensions is of local concern, and (4) the General Assembly did not promulgate the 1985 Retirement Act pursuant to the provisions of Article XIII, section 4, of the Rhode Island Constitution. Id. at 1224.
At issue before this Court is the legality of the previously enumerated actions the Board took at its October 26, 1989 and December 6, 1989 meetings. Plaintiffs contend that these actions were in violation of the Act which they argue is still applicable to the Retirement Board though this Board now possesses Charter-granted powers to administer and operate the Providence employee retirement system. Case law in this state consistently reinforces the principle that a home rule charter, once duly adopted by the qualified voters of a city or town, limits the state's ability to legislate in local matters except by acts of general application or by a special act, both earlier described.Opinion to the House of Representatives, 79 R.I. 277, 280,87 A.2d 693 (1952). One such general act was the Firefighters' Arbitration Act which in its application to the firefighters of any city or town superseded provisions of a then-existing home rule charter in East Providence. O'Neill v. City of EastProvidence, 480 A.2d 1375 (R.I. 1984). In contrast, theBruckshaw court held that the Providence Home Rule Charter ". . . vests authority in the Retirement Board to regulate city employee pensions and that the 1985 Retirement Act in its attempt to regulate pensions for Providence employees conflicted with § 908 of the Providence Home Rule Charter and was thus `invalid and unenforceable.'" This Court reaffirms that the Providence Retirement Act is not an act of general, statewide application. This Court further finds that the Board possesses plenary power to administer and operate the city employee retirement systems, as evidenced by the absence in the Charter of any provisions concerning same Board's administration and/or operation of the system and in the presence of the specific, clear grant of power to same Board in § 908 of this Charter. For the Board to be required to rely on and apply the Act to its Charter, vested powers and duties that are "without limitation" (Section 908, Charter) to administer and operate the city employee retirement system would be inconsistent with the plenary power over same given the Board by the "ratified, confirmed, and validated" Providence Home Rule Charter. (P.L. 1981, Chapter 37).
In the case at bar, plaintiffs citing Section 401 of the Charter, additionally contend that the above-enumerated actions the Board took at its December 6, 1989 meeting exceed said Board's authority under this Charter. Section 401 of the Charter grants the legislative powers of the city shall be vested in a city council, the powers and duties of which shall include "without limitation" (emphasis added) five, specific powers. The phrase, "without limitation," is again used in Charter Section 706, this time regarding the five enumerated "Powers and duties" of the school board. Significant to note, however, is that "the powers and duties" of the school board are subject to Section 707, entitled, "Budget." Section 707 requires the school board to submit to the finance director an itemized budget which may then be revised by the finance director, after which the mayor presents same to the city council. Finally, the city council has the power and authority to act on the school budget and "may appropriate (emphasis added) funds to the school department in lump sum or in such detail as it deems necessary and appropriate."
Although the enumerated powers and duties of the retirement board are, like those of the school board, "without limitation," said retirement board's powers and duties have no restraint similar to that exercised by Section 708 which follows 707 with respect to the school board. In contrast, Section 908(b)(2) simply requires the retirement board ". . . [t]o report annually . . . to the city council . . . showing the fiscal transactions of the system for the fiscal period of the city next preceding, the amount of the accumulated cash and securities of the system and a copy of the last balance sheet showing the financial condition of the system. . . ." Strikingly absent from the above provision is any language regarding budgetary approval or reductions. Additionally, Section 809 entitled "Reduction to balance budget" specifically mandates that ". . . there shall be no reduction of appropriations for the city debt payments, theretirement fund (emphasis added) or the sinking fund to balance the budget."
Plaintiffs further argue that the Board's here-disputed actions of December 6, 1989 will in effect require the city to make additional appropriations in excess of 20 million dollars and that such actions will ultimately infringe on the city council's authority to legislate pursuant to Section 401 of the Charter. As demonstrated above, nowhere in the Charter are the Retirement Board's actions, unlike those of the school board, subject to revision or approval by the city council. A school committee's lack of funds has not previously abridged retirees' rights to receive money due them under a collective bargaining agreement between the school committee and the teachers' union.Providence Teachers Union, Local 958, American Federation ofTeachers, AFL-CIO v. School Committee of the City of Providence,108 R.I. 444, 276 A.2d 762 (1971). The court in ProvidenceTeachers Union, Local 958 held ". . . the money due the retirees is a debt of the city," and ruled that the school committee's lack of funds did not constitute a legal defense to payment.Id. at 767. Again, in Town of Scituate et al v. ScituateTeachers' Association et al, 110 R.I. 679, 296 A.2d 466 (1972), the town refused to appropriate funds for payment of teacher salaries, as agreed upon in a collective bargaining agreement between the school committee and the teachers' union, by cutting the proposed school committee budget. Here the court ruled that as the school committee per the School Teachers' Arbitration Act was legally empowered to bargain collectively with the teachers, such power would be ". . . useless if the body charged with appropriating funds were free to ignore the existence of a valid agreement fairly reached at the bargaining table by the school committee and the bargaining agent." Similarly, in the case at bar, as the Charter has granted to the Retirement Board the authority to operate the retirement system, the city's failure to appropriate the funds necessary to the Board's operation would make this grant of authority meaningless. Accordingly, this Court here finds that the actions taken by the Board at its December 6, 1989 meetings were pursuant to its delegated authority to operate the retirement system of the city of Providence and did not constitute attempts by this Board to legislate.
For the reasons herein above set out, this Court declares that the actions the Retirement Board took at its December 6, 1989 meeting (Count I, 5(a)-(g)) and at its October 26, 1989 meeting (Counts II, III, IV and V) are within said Retirement Board's authority and are valid and binding. With regard to plaintiffs' prayers for injunctive relief — for a permanent injunction restraining the defendants from taking any action or making any contribution or payment pursuant to the actions of the Retirement Board referred to in paragraphs 9 and 11 of the Stipulation of Facts (appended hereto) and a permanent injunction restraining the defendants from taking any action contrary to the Act — both prayers are denied.
The Court's previous May 1, 1990 Order granting plaintiffs' Motion for a Preliminary Injunction is hereby dissolved.
Regarding all of the foregoing, counsel shall prepare the appropriate orders for entry.